## Commonwealth *against* Flanagan.

An Act of the Legislature authorizing a Court of Oyer and Terminer to be held in a county by one of the Judges of the Supreme Court and two associate Judges of the county, is contrary to the provisions of the constitution.

By the Act of Assembly of the 4th April 1844, one of the Judges of the Supreme Court was authorized and required to hold at the court-house in the county of Cambria, in conjunction with one or more of the associate Judges of that county, a special Court of Oyer and Terminer, and to hear and determine a rule to show cause why the verdict of the jury and the sentence of the Court of Oyer and Terminer of that county in the case of *The Commonwealth* against *Bernard and Patrick Flanagan,* indicted for the murder of Elizabeth Holden, should not be set aside and a new trial granted on cause shown by the defendants. The CHIEF JUSTICE, on behalf of himself and the other Judges, (except Judge HUSTON, who was sick), addressed a letter to the Governor, which was communicated to the Legislature on the 15th April 1844, stating that they were forbidden by the constitution from exercising the jurisdiction assigned to them, and assigning the reasons on which this opinion was founded, as follows:

" The constitution (Art. V, sec. 5) provides that the Judges of the Court of Common Pleas in each county shall, by virtue of their offices, be Justices of Oyer and Terminer and general jail delivery, for the trial of capital and other offenders therein; and two of the said Judges, *the president being one,* shall be a quorum; but they shall *not* hold a Court of Oyer and Terminer when the Judges of the Supreme Court or any of them shall be sitting *in the* same county. The party accused, as well as the Commonwealth, may, under such regulations as shall be prescribed by law, remove the indictment and proceedings, or a transcript thereof, *into the Supreme Court.* Now, the Act proposes to constitute a Court of Oyer and Terminer of which Judges of the

[Commonwealth v. Flanagan.]

Common Pleas are to be a component part, the president *not* being one. This cannot constitutionally be done. The place of the president can no more be supplied by putting a Judge of the Supreme Court into it than by putting the president Judge of a neighbouring district into it.

Again. It is proposed that Judges of the Common Pleas shall hold a Court of Oyer and Terminer, while a Judge of the Supreme Court is sitting in the county for the same purpose. The provision that the Judges of the Supreme Court and Judges of the Common Pleas (though both Judges of Oyer and Terminer, but by different commissions) shall not exercise their functions in the same place and at the same time, conclusively shows that they shall not exercise them in conjunction. The object was to put the benefit of the highest judicial authority and experience within the reach of the Commonwealth and the accused reciprocally. But the benefit would be illusory, if the functions of the supreme Judges might be impeded or controlled by the functions of inferior Judges, more numerous, and therefore more powerful. Such a mixture of functions is unknown to the constitution. It is not perceived that a Judge of the Supreme Court and a Judge of the Common Pleas can sit together as Justices of Oyer and Terminer by virtue of the authority emanating from distinct and discordant commissions. Their commissions do not make them Judges of the same court, and the authority emanating from their commissions can have no greater effect. Is the court proposed to be constituted a superior or an inferior one? If the former, then are Judges of the Common Pleas to be Judges of the Supreme Court—if the latter, then is a Judge of the Supreme Court to be a Judge of the Common Pleas. If the proposed court is to be the Supreme Court, then the proceedings cannot be removed into the Supreme Court, for they are there already; but without the benefit of revision by all the Judges, the Act would obliterate the distinction so strongly marked between the superior and inferior courts.

Still further. By the 15th section of the Bill of Rights, it is declared that no commission of Oyer and Terminer shall be issued. The Act in question, though not in form a commission of Oyer and Terminer, has all the effect of one; and it is therefore inconsistent with at least the intent of the constitution, which meant · to secure to the Commonwealth, as well as the accused, a trial by the ordinary tribunals, to the exclusion of special tribunals created for the trial of particular cases, it was supposed, with a view to produce a particular result. It is true that the result in this instance could not prejudice the accused; but as these special tribunals have been used in other countries as instruments of oppression, it seems that the object was to exclude them for every purpose, whether of good or of evil. It is, indeed, provided by the 1st section of the 5th article, that the judicial power shall be vested in certain enumerated courts, "and in such other courts as

the Legislature shall from time to time establish." But this has regard to courts established for general purposes, and to be held by judges commissioned for those purposes expressly. The only practical exception to this was the high Court of Errors and Appeals, composed of the supreme judges and presidents of the Common Pleas; but the constitutionality of that court was strongly doubted, and it was speedily abolished.

These considerations persuade us that we are incompetent to execute the power proposed; and the more so, as the matter touches the lives of the accused. Should they happen to be executed under a sentence of the court of Huntingdon county, it might give rise to a painful doubt in the mind of every one who had acted under the statute, of the legality of his interference. But there is no necessity to raise such a doubt. All that is required is to direct a Judge of the Supreme Court to hold a Court of Oyer and Terminer, to receive a certified copy of the record from the County Court, and, the motions being disposed of, to remit the record to the court of Huntingdon county for trial, or to the court of Cambria county for execution, as the case may require."

An Act was immediately afterwards passed in accordance with these views, authorizing a special Court of Oyer and Terminer to be held in that county by one of the Judges of the Supreme Court. Mr Justice ROGERS attended, and decided the rule against the defendants.