# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

EASTERN DISTRICT—PHILADELPHIA 1871.

---

69    9
213   86
213   87

## The Commonwealth *ex rel.* Attorney-General *versus* Hipple.

1. The Criminal Court of Schuylkill county, created by act of April 18th 1867, is a constitutional court.

2. The legislature can establish criminal courts, in addition to those specified in the Constitution, and give them concurrent jurisdiction with existing criminal courts.

3. The legislature can invest courts with such jurisdiction as appears necessary and proper, and part the judicial powers of the state so as to adapt them to its growth and change of circumstances.

4. The exclusiveness of the jurisdiction in the Oyer and Terminer as to certain cases, is created by the legislature not by the constitution.

5. The Criminal Court of Schuylkill county has jurisdiction over all offences in that county.

6. The District Attorney is bound to prosecute in that court offences returned there: if a question as to jurisdiction arises, the court not the district attorney must determine it.

March — 1870. Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Mandamus to Charles D. Hipple, Esquire, District Attorney of the county of Schuylkill, to sign, &c., bills of indictments upon recognisances returned into the Criminal Court of Schuylkill county.

By an Act of Assembly approved April 18th 1867 (Pamph. L. 91), the counties of Dauphin, Lebanon and Schuylkill were erected into a judicial district under the name of " The First Judicial Dis-

(9)

[Commonwealth *v.* Hipple.]

trict of Criminal Jurisdiction." The court to consist of one judge learned in the law, who should be president judge of the district, and in all criminal matters have "like powers, jurisdiction and authority, as the president judge of any judicial district in the Commonwealth, as well when holding a Court of Quarter Sessions of the Peace and Court of Oyer and Terminer as in vacation," &c. ; each of the courts to have power and authority to inquire of, try, &c., all murders, robberies and felonies, misdemeanors, &c., within the county for which such court was created, &c., to sentence all persons convicted, "and generally to do all such matters and things as any court of General Quarter Sessions of the Peace or Oyer and Terminer, &c., may or can do within the county for which such court is created by this act.     *     *     *

"After passage of this act, all recognisances taken within the county of Schuylkill shall be taken for the appearance of the prosecutors, defendants and witnesses at the court created by this act for said county, and not to the Court of Quarter Sessions of Schuylkill county ; and from and after the first Monday of June next, the jurisdiction of the Court of Quarter Sessions of the Peace, and Court of Oyer and Terminer, of Schuylkill county, over felonies and misdemeanors, shall cease and determine, and the whole of the said jurisdiction, now vested in the said court, shall be and the same is hereby vested, from that date, in the court, for the said county, created by this act; and all indictments pending, and recognisances, in the Court of Quarter Sessions of the Peace, and the Court of Oyer and Terminer, in Schuylkill county, shall be then transferred to, and be heard, tried, proceeded in and determined in the court created by this act, in the same manner, and with the same effect, as if the indictments had originally been found on the recognisances taken therein : * * * the sessions of the court created by this act shall be held as follows :—In Schuylkill county, on the first Mondays of January, April, July and October, and to continue four weeks, if the business shall require it, &c."     *     *     *

The act further provided for the appointment and subsequent election of a judge of the court according to the Constitution ;—that the clerks of the Court of Quarter Sessions and Oyer and Terminer in the respective counties should be clerks of the new court ; that sheriffs and other officers should obey and execute the orders of the court ; the existing laws relating to the selection and summoning grand juries and petit juries were extended to the new court ; no grand jury to be summoned "in the present Court of Oyer and Terminer or Quarter Sessions as now held in Schuylkill county, after the establishment of the Criminal Court under this act ; but the grand jury shall be selected for and summoned to attend the Criminal Court in said county only."

[Commonwealth *v.* Hipple.]

Subsequently David B. Green, Esquire, was duly commissioned judge of the Criminal Court.·

Charles D. Hipple, Esquire, the District Attorney of Schuylkill county, by writing addressed to the President Judge of the court, alleging that the law was "lame and defective," requiring "legislative amendatory action;"—that it was "unconstitutional in several parts,"—created a conflict of jurisdiction with the Court of Common Pleas of Schuylkill county;—that the Supreme Court in cases connected with the court had declined to give a decision which "would have settled the whole question," and for other reasons set out in the writing declined "trying any cases in this court until such time as the law in its defects be corrected by the legislature or the questions of the extent of jurisdiction be finally settled by the highest tribunal of the state."

On the 3d of January 1870, F. Carroll Brewster, Esquire, the Attorney General, filed an information in the Supreme Court, setting out the foregoing facts, and suggested that a mandamus issue to the District Attorney, "commanding him to sign all bills of indictment on recognisances returned to the said Criminal Court, and to conduct in said court all criminal or other prosecutions in the name of the Commonwealth, or when the state is a party, which arise in said county, and which have been returned to said court." An alternative mandamus was issued on the same day, returnable on the third Monday of the same month (January 1870).

The respondent answered, denying that it was his duty to sign bills of indictment and conduct prosecutions in cases returned into the said court; that few recognisances had been returned into said court; that he had tried all cases in the Court of Quarter Sessions and Oyer and Terminer; he denied that the public interest suffered by not trying cases in the Criminal Court.

Besides the reasons given in his paper filed, he gave the following in answer to the mandamus:—

1. That the act creating the Criminal Court was unconstitutional.

2. That he had never failed to sign bills of indictment and try cases in the regular courts, and that he had the right to prosecute the pleas of the Commonwealth there.

3. The Criminal Court had no power to sue out forfeited recognisances and therefore no power of enforcing the attendance of prosecutors, &c.

4. That there was a legal court in said county of Schuylkill (which is a judicial district), that is entitled to take jurisdiction of all cases arising in said county, and that the respondent had tried all criminal cases therein.

5. That the act creating the Criminal Court does not define

[Commonwealth *v.* Hipple.]

what part of the criminal jurisdiction of Schuylkill county is vested in that court. That no concurrent jurisdiction can constitutionally exist in the Criminal Court with the Court of Oyer and Terminer in the judicial district composed of Schuylkill county, to try cases cognisable in the latter court, and that as to cases triable in the Court of Quarter Sessions, the law did not command the respondent to try any cases in the Criminal Court.

The Attorney-General demurred to the answer, and the respondent joined in the demurrer.

The case was argued by *F. B. Gowen* and *F. Carroll Brewster*, Attorney General, for the Commonwealth, and by *J. W. Ryan, F. W. Hughes,* and *B. W. Cumming,* for respondent.

The opinion of the court was delivered, May 5th 1870, by

AGNEW, J.—This proceeding is a mandamus at the relation of the Attorney-General of the Commonwealth against Chas. D. Hipple, the District Attorney of Schuylkill county, to compel him to sign bills of indictment, and to conduct all criminal and other prosecutions in the name of the Commonwealth in the Criminal Court of Schuylkill county. The answer of the defendant brings into question the constitutionality of the court and its jurisdiction, and the duty of the District Attorney to prosecute the pleas of the Commonwealth therein. The Attorney-General has demurred to this return.

The constitutionality of the act to establish criminal courts for Dauphin, Lebanon and Schuylkill counties, approved the 18th of April 1867, Pamph. L. 91, was established by our decision in the case of the Commonwealth *v.* Green, 8 P. F. Smith 226. It is argued, that that decision settled no more than the constitutionality of the commission issued to Judge Green. This is incorrect. The authority to commission him depended on the constitutionality. of the law creating the court. There cannot be a constitutional judge in an unconstitutional court, and it was said in the outset of the opinion of the court, delivered by our Brother Sharswood: " If the legislature had power to erect such a district; to provide for the election of the judge therein, in the manner prescribed in the act, and to invest him with any of the powers and rights conferred upon him, we cannot sustain the demurrer, and give judgment of ouster against the defendant." He then states : " The main point of contention is, whether the legislature can transfer any part of the criminal jurisdiction now vested in the courts named in the Constitution to any other court ;" and proceeds to show that this is constitutional. The question of the constitutionality of the court was fully decided, and the District Attorney ought not to have refused to perform his duties under the law on that ground. We shall therefore not renew the discussion, notwith-

standing the effort to induce us to recede from that decision, but shall add, in confirmation, a few observations upon the effect of the amendments to the Constitution of 1790, made in 1838 and 1850, not adverted to in the former opinion.

It was unquestionably the intention of the Convention, in framing the Constitution of 1790, to vest by the fifth article the whole judicial power of the state in tribunals created and to be created. The first section, therefore, declares, that " the judicial power of the Commonwealth shall be invested in a Supreme Court, in Courts of Oyer and Terminer and General Jail Delivery, in a Court of Common Pleas, Orphans' Court, Register's Court, and a Court of Quarter Sessions of the Peace, and such other courts as the legislature may from time to time establish." Between 1790 and the adoption of the amendments of 1838, the legislature had changed and reorganized the Supreme Court several times, by abolishing the Nisi Prius Courts existing at the adoption of the Constitution all over the state, and substituting the Circuit Court system, which it repealed, re-enacted, and again repealed, and by adding to the number of judges. It had also reorganized some of the Courts of Common Pleas, and added law judges to them. It had created new courts, called District Courts, for Philadelphia, Lancaster and York, and created several Mayor's Courts, with jurisdiction for the trial of misdemeanors before triable in the Quarter Sessions. Thus, before 1838, the first section of the fifth article of the Constitution of 1790 had received a construction which enabled the legislature to reorganize the courts named in the Constitution and create new courts and new judges, and to take away portions of the jurisdiction of the constitutional courts and confer them on new tribunals. Under these circumstances the Convention of 1837–8 struck out the second section of the fifth article, which read as follows: " The judges of the Supreme Court and of the several Courts of Common Pleas, shall hold their offices during good behavior. But for any reasonable cause, which shall not be sufficient ground of impeachment, the governor may remove any of them on the address of two-thirds of each branch of the legislature. The judges of the Supreme Court and the presidents of the several Courts of Common Pleas, shall, at stated times, receive for their services an adequate compensation, to be fixed by law, which shall not be diminished during their continuance in office ; but they shall receive no fees or perquisites of office, nor hold any office of profit under this Commonwealth."

In place of this section the Convention adopted a new provision, authorizing the judges of the Supreme Court, of the several Courts of Common Pleas, and of such *other* courts of record as *are* or *shall be* established by *law*, to be nominated by the governor, and by and with the consent of the Senate appointed and commissioned by him. It further provided, that the president judges of the

Courts of Common Pleas, and of *such other courts* of record as are or shall be established by law, and all other judges required to be learned in the law, should hold their offices for the term of ten years, if they shall so long behave themselves well.    Thus there was a distinct constitutional recognition of the power which had been exercised by the legislature in reorganizing the courts named in the Constitution, and adding thereto law judges, and in creating new courts of record with judges learned in the law.    As a measure of precaution, to preserve the former interpretation of the unaltered portions of the Constitution, the schedule provided, in section third, that: " The clauses, sections, and articles of the Constitution, which remained unaltered, shall continue to be construed and have effect as if the said Constitution had not been amended."    The effect of this was to preserve the interpretation the first section of the fifth article had received, which enabled the legislature to reorganize the old and erect new courts.    After 1838 and before the adoption of the amendment of 1850, a number of new courts had been created, several of the Courts of Common Pleas reorganized, new judges learned in the law provided for, and this court had made the decisions in Commonwealth *v.* Zephon, 8 W. & S. 382; Commonwealth *v.* Martin, 2 Barr 244; and In re Pennsylvania Hall, 5 Barr 204.    These cases had decided that the Court of Criminal Sessions was a constitutional court; that the Act of 3d July 1843, transferring the jurisdiction of the Criminal Court to the Court of Oyer and Terminer and Court of Quarter Sessions, was a valid law; that a Court of Oyer and Terminer could be held by a judge learned in the law, not the president; and that a single judge can hold a Court of Quarter Sessions when directed by the legislature.    These cases were all decided from 1844 to 1847, and in full view of them the legislature, in 1849, proposed the amendment of 1850, in lieu of the second section of the fifth article, using the same language in reference to the *election* of judges, to wit: " of such *other courts* of record as *are* or *shall be* established by *law*," and, " all other judges required to be *learned in the law.*"    This is again an unmistakable recognition in the Constitution of the power which had been exercised by the legislature in the establishment of the new courts in the interim between 1838 and 1850, exercising jurisdictions which had belonged to the old courts under the Constitution of 1790, and in the reorganization of the old courts, adding new law judges.    There ought not to be any doubt, therefore, of the power of the legislature to establish a new Criminal Court, and to give it concurrent jurisdiction with existing courts for the trial of crimes and misdemeanors. The Constitution having neither defined nor limited the jurisdictions of the courts named in the Constitution, or of those to be afterwards established, the power to create new courts and new law judges carried with it the power to

invest them with such jurisdictions as appear to be necessary and proper, and to part and divide the judicial powers of the state so as to adapt them to its growth and change of circumstances.

The District Attorney in his return, also denies the jurisdiction of the Criminal Court, on the ground that some of the offences committed to it are triable exclusively in the Court of Oyer and Terminer. But this exclusiveness is a creature of law and not of the Constitution. The power to create a new court and vest it with jurisdiction to try all offences in the county, being settled, the jurisdiction of the Oyer and Terminer is no longer exclusive, but is merely concurrent.

The argument for the District Attorney that the act gives to the Criminal Court only that which it takes from the Court of Oyer and Terminer and Quarter Sessions, is a mistaken view of the law. The first part of the act is merely affirmative, vesting the Criminal Court with full power and authority to inquire of, hear, try and determine, agreeably to the laws and customs of this Commonwealth, all murders, rapes, robberies, arsons, felonies, misdemeanors, and other offences which have been or may be committed within the county for which the court is created, and which would be cognisable in any Court of Quarter Sessions of the Peace, and Court of Oyer and Terminer within this Commonwealth, if committed within their jurisdiction, &c. So far the act merely establishes a new Criminal Court, with the same jurisdictions as the Oyer and Terminer and Quarter Sessions, and does not supersede them. This vests only a concurrent jurisdiction. It is not until after vesting jurisdiction in the new court, the act proceeded to wrest all the powers of the Courts of Oyer and Terminer and Quarter Sessions from them, that it became invalid; and so we held in The Commonwealth v. Ryan, at Harrisburg, in 1867. This left the valid part of the act standing, and disposes also of the alleged difficulty of the District-Attorney in determining what part of the criminal jurisdiction over offences is vested in the new court. All is vested by the express words of the law, and there is no line of demarcation to be followed. It is concurrent with the old courts, and when a difficulty arises in any particular case, it will be for the court to determine its own jurisdiction, and not the District Attorney.

He is incorrect in asserting that there is no duty on his part to prosecute the pleas of the Commonwealth in the Criminal Court. The first section of the Act of the 3d of May 1850, provides that: "He shall sign all bills of indictment, and conduct in court all criminal and other prosecutions in the name of the Commonwealth, or when the state is a party, which arise in the county for which he is elected, and perform all the duties which now by law are to be performed by deputy attorney-generals." He is bound to follow the the business of the Commonwealth into whatever

[Commonwealth *v.* Hipple.]

courts in the county that business is authorized by law to be tried. His return to the writ of alternative mandamus is therefore insufficient, and judgment must be given for the Commonwealth.

And now, May 5th 1870, the demurrer of the Commonwealth to the return of the defendant is sustained, and the court give judgment for the Commonwealth with costs, and order a peremptory mandamus to issue to the defendant.

THOMPSON, C. J., dissented.