# In the Application of the President Judges of the Eighth and Tenth Districts.

1. The Act of April 2d 1860, sect. 1 (Courts), is constitutional, and is a special organization of the several courts for necessary purposes when the proper president is disabled, by the substitution of another in his place.

2. Another judge learned in the law can be substituted for the president, as the judge of a Court of Oyer and Terminer.

3. The reorganization of Courts of Common Pleas is within the legislative power, and new courts can be created and invested with like powers.

4. The power to try felonies triable in the Oyer and Terminer, is not confined to the presidents of the proper district, but may be conferred on other judges learned in the law, and upon judges of courts specially created for the trial of such causes.

5. Under Art. 5, 3d section of the Constitution, there is power to organize courts differently from the mode therein provided.

6. The number of judges may be changed; associates learned in the law may be constituted with the same powers as the president.

7. The Constitution has not provided for the appointment or commissioning of judges of the county courts, except of the Common Pleas.

8. The judges of the Common Pleas are by virtue of their office, constituted judges of the other courts.

9. A president holding the Common Pleas *in* a county, becomes president of all the other courts by virtue of his office.

10. In case of sickness or other disability contemplated by the acts relating to special courts, the president of the proper district has power to call in the president of another, to hold the regular term of his courts in any county in his district.

11. The president so called in, when sitting can hear and try all causes pending at that time in any of the courts, civil or criminal, including those triable in Oyer and Terminer.

12. In such cases it is necessary that a proper certificate, setting forth the disqualification, &c., and the call on the other president to hold the regular term, signed by the proper president, should be filed of record and entered on the minutes of the court, as the evidence of the authority to hold the courts, and of title to the compensation.

13. Commonwealth *v.* Flanagan, 7 W. & S. 68, Commonwealth *v.* Ickhoff, 9 Casey 80, Zephon's Case, 8 W. & S. 382, Commonwealth *v.* Green, 8 P. F. Smith 226, remarked on.

January 2d 1871.  Before Thompson, C. J., Agnew, Sharswood and Williams, JJ.  Read, J., at Nisi Prius.

The Hon. Alexander Jordan, President Judge of the Eighth District, including Northumberland county, and Hon. Joseph Buffington, President of the Tenth District, including Armstrong county, at January term 1871, applied to the Supreme Court, to assign one of their number to hold a Court of Oyer and Terminer

14 P. F. Smith—3

[In the Application of the Judges.]

in each of these counties on account of the inability from illness of the applicants to hold their respective courts.

The opinion of the court, in answer to the application, was delivered February 27th 1871, by

AGNEW, J.—We have been asked by the Hon. Alexander Jordan and the Hon. Joseph Buffington, on account of their illness and inability to hold Courts of Oyer and Terminer and General Jail Delivery in the counties of Northumberland and Armstrong. The frequency of these calls and the inroads made upon our time have compelled us to examine into the foundation of the impression that a president judge cannot be called in from another district to hold a special court, which will include the Courts of Oyer and Terminer and General Jail Delivery. The doubt seems to have been first intimated in a letter of C. J. Gibson to the governor, relating to the case of the Commonwealth *v.* Flanagan, reported in 7 W. & S. 68. The remark was evidently casual, and had no special reference to the subject before his mind. We find it the next time in an opinion of Lowrie, C. J., in Commonwealth *v.* Ickhoff, 9 Casey 80, upon the power of the judges of this court to hold Courts of Oyer and Terminer. It is there but a *dictum*, also. The same doubt may have been intimated in another case, but in none has the point been decided. It is, therefore, open for examination. Before stating our views, it is proper to refer to the legislation relative to special courts. By the 37th, 38th, 39th, 40th, and 41st sections of the act of 14th April, 1834, Brightly's Dig. 159, full provision is made for holding special Courts of Common Pleas by the substitution of the president judge of an adjoining district for the proper president, when disqualified by interest, title, or relationship, or by having been of counsel. Afterwards by an act, omitted from the text of Brightly's Digest, passed the 4th April, 1843, § 8, P. L. 133, the provisions of the 37th, 38th, 39th, 40th, and 41st sections of the act of 1834 were extended to all cases in the Orphans' Courts, Register's Court, Quarter Sessions, and Oyer and Terminer, in which the president or associate judges, or either of them, shall be personally interested or otherwise disqualified for the performance of judicial duty from any of the causes specified in said sections. The Act of 18th April, 1853, P. L. 573, not in Brightly's text, extended the power to any president judge of any judicial district, though not in an adjoining district. This was followed by the Act of 22d April, 1856 (Brightly's Dig. 160, P. L. 122), which provides that whenever a president judge shall be a party in any suit, *prosecution*, or proceeding, in *any court* over which he presides, such suit, *prosecution*, or proceeding shall be tried and heard before the president judge residing nearest the place of such trial, who shall be disinterested. Then came the Act of 2d April, 1860 (Brightly's Dig. 160, P. L. 123),

enacting that "In case of sickness of a president judge in any judicial district in Pennsylvania, or of sickness in his family, or of his inability to hold *the regular term of his courts,* in any county, from any cause whatever, it shall be lawful for him to call upon any other president judge in the Commonwealth, who may not himself be engaged, to hold *said regular term of courts,* and said president judge so called upon is *hereby authorized and empowered to discharge the duties appertaining to said office as fully as the regularly commissioned president judge of said district could do, if present,* and shall be entitled to the same compensation allowed by law for holding special courts." This legislation is evidently a special organization of the several courts for necessary purposes, when the proper president judge is disabled, by the substitution of another judge in his place. Is this within constitutional power? We think it is, whether the act be a reorganization or the creation of a new court for special purposes. If anything can be considered as settled by judicial determination, it is that another judge, learned in the law, can be substituted for the president of the court as the judge of the Court of Oyer and Terminer and General Jail Delivery, under the power contained in the 3d section of the 5th article of the Constitution. This was decided in Zephon's Case, 8 W. & S. 382, by the old court, of which C. J. Gibson was a member, in the next year after his letter to the governor in Flanagan's case. Zephon's Case was directly re-affirmed by the old court in In re Pennsylvania Hall, 5 Barr 209, and by the new court in Kilpatrick v. Commonwealth, 7 Casey 198; and in Foutz v. Commonwealth, 9 Id. 338. It was also recognised and approved in Commonwealth v. Martin, 2 Barr 244, and In re North. Lib. Hose Co., 1 Harris 193. The reasoning on which these decisions rest is incontrovertible. While all concede that the Courts of Common Pleas are constitutional courts and cannot be expunged from the judicial system, it is equally clear that their reorganization is within the legislative power, and that new courts, also, can be created and invested with like powers. The 1st section of the 5th article of the Constitution declares that " the judicial power shall be vested in the Supreme Court, in Courts of Oyer and Terminer and General Jail Delivery, in a Court of Common Pleas, Orphans' Court, Register's Court, and a Court of Quarter Sessions of the Peace for each county, in justices of the peace, *and in such other courts as the legislature may from time to time establish.*" This section establishes the courts, but not their organization or their jurisdiction. Hence, legislative courts have been created, some with civil and others with criminal jurisdiction, including capital and other felonies tried in the Oyer and Terminer. The case of The Pennsylvania Hall sustained the power of the Court of Criminal Sessions established for Philadelphia. Still more to the purpose is the recent case of the

[In the Application of the Judges.]

Commonwealth *v.* Green, 8 P. F. Smith 226, in which the power of the legislature was upheld to establish a criminal court for Dauphin, Lebanon, and Schuylkill counties, with jurisdiction to try capital and other felonies triable in the Oyer and Terminer. The opinion of Justice Sharswood fully vindicates the legislative power.

It is evident, therefore, that the power to try capital and other felonies, such as are triable in the Court of Oyer and Terminer and General Jail Delivery, is not confined to the president judges of the proper district, but may be conferred upon other judges learned in the law, and upon judges of courts specially created for the trial of such causes. This brings us to the power to organize the Courts of Common Pleas, upon which the other county courts hang. The 3d section of the 5th article says, "*until otherwise established by law*, the Courts of Common Pleas shall continue as at present established. Not more than five counties shall at any time be included in one judicial district organized for said courts." The power to organize the courts differently has been considered clear. Hence, the number of judges may be changed, and associates learned in the law constituted, with the same powers as the president. The only limitations are those contained in the 5th section of the 5th article, which is in these words: "The judges of the Court of Common Pleas *in* each county shall, *by virtue of their offices*, be justices of the Oyer and Terminer and General Jail Delivery for the trial of capital and other offenders therein; any two of the said judges, *the president being one*, shall be a quorum; but they shall not hold a Court of Oyer and Terminer or Jail Delivery in any county when the judges of the Supreme Court, or any of them, shall be sitting in the same county." The purpose of this section is most material to its proper interpretation. The Constitution has not provided for the appointment or commissioning of the judges of the county courts, except the judges of the Common Pleas. The purpose of the 5th section, and also of the 7th, was to provide for those who should be judges of the other courts. Those sections were intended to accomplish this purpose by constituting the judges of the Common Pleas the judges of the other courts by virtue of their offices. Hence commissions are issued to the judges of the Court of Common Pleas alone, who thereby become judges of the other courts. Therefore the judges of the Common Pleas *in* each county are judges of the Courts of Oyer and Terminer. But who the judges of the Common Pleas *in* the particular county shall be, and who the particular president judge shall be, who must be of the quorum, will depend on the organization of the Court of Common Pleas by the legislature. The constitution does not say they shall be the judges *for* the county, but the judges *in* the county. The president judge, who is elected for a district, is not, except in a general sense, a judge for the particu-

[In the Application of the Judges.]

lar county; but as the president of the Common Pleas sitting in the county, he is, by virtue of his office, judge, also, of the Oyer and Terminer. But that the president judge of the Common Pleas is not unalterably the president judge of the particular county is clear, otherwise there could be no special Court of Common Pleas to try causes in that county, when the proper president is disqualified. If, therefore, a special Court of Common Pleas can be constitutionally established for the trial of certain causes, which no one doubts, by force of the Constitution itself, it would seem the president holding the Common Pleas *in* the county becomes president of all the other courts by virtue of his office; or, if not, certainly he is not disqualified by the 5th section from being the president of the other courts, when so constituted by law. In such a case it is only the organization of the court which is changed by the substitution of one president for another. Now the power to substitute is the very point decided in the cases of Zephon, Kilpatrick, and Foutz, where it was held in those cases that an associate learned in the law could constitutionally take the place of the president. Whatever might have been the impression of any one formerly on this question, the point is conclusively adjudged. It would be a terrible thing to say that the many convictions of murder before, and sentences of death pronounced by, associate law judges have been so many judicial murders. A special Court of Common Pleas being a legally constituted court, to say that none but the president of the district can hold a Court of Oyer and Terminer, is to place the power he derives from his commission as a judge of the Common Pleas to be a judge of Oyer and Terminer higher than the commission itself, which gives place to that of another judge, when called to hold a special Court of Common Pleas. It is also to narrow the meaning of the Constitution to an inconvenient and unnecessary degree, while it detracts from the acknowledged power of the legislature to establish new courts with Oyer and Terminer jurisdiction. It is needless to say that the clause in the bill of rights, forbidding special commissions of Oyer and Teminer, has nothing to do with the question. This has been clearly shown by our Brother Sharswood in the Commonwealth *v.* Green, 8 P. F. Smith 232.

Our conclusion, therefore, is that, in the case of sickness and other disability contemplated by the acts of legislation already referred to, the president judge of the proper district has power to call in the president judge of another district to hold the regular term of his courts in any county in his district. The president judge so called in, when sitting, has jurisdiction and authority to hear and try all causes pending at that term in any of the courts, civil or criminal, including capital and other felonies in the Courts of Oyer and Terminer and General Jail De-

[In the Application of the Judges.]

livery.  It is necessary that a proper certificate, setting forth the cause of disqualification or disability, and containing the call upon the president judge to hold the regular term of the courts, signed by the proper president, should be filed of record, and entered on the minutes of the court as the evidence of authority to hold the courts, and of title to the compensation allowed for special courts.

This conclusion has the concurrence of all the members of this Bench, including Justice Read, who is now sitting at Nisi-Prius. The applications of Judges Jordan and Buffington are, therefore, refused; and the prothonotary is ordered so to notify them, and to certify to each a copy of this opinion.

Concurring opinion of THOMPSON, C. J.—In the cases referred to by my brother Agnew, in the foregoing opinion, viz., The Commonwealth *v.* Kilpatrick, Commonwealth *v.* Foust, and The Commonwealth, *ex rel.* Attorney-General, *v.* Green, I resisted, to the best of my ability, the conclusions that any other than those judges indicated in the constitution could legally be of the quorum to compose and hold courts of Oyer and Terminer, namely, the judges of the Supreme Court, or some of them, or the president judge and his associates of the proper county in which the crime is triable.  In this view, myself, as well as another judge of this court, have been overruled by the majority of the bench.  It has been held by this court, that a judge learned in the law may, together with his associate or associates, hold such courts.  I am not satisfied of error yet; but I must admit that the law is at present conclusively settled against me, and I am, as every other citizen, bound by it.  I therefore concur in the above opinion, that the law as settled, will permit the holding of Oyer and Terminer courts, by president judges of other districts, in cases of inability on the part of the president judge of the district to hold them, and agree in recommending the calling in of other judges in the districts above mentioned to hold the ensuing courts of Oyer and Terminer.