# Morgan *v.* Reel, Appellant.

*Constitutional law—Courts—Judges—Orphans' court—Common pleas—Act of April* 18, 1905, *P. L.* 208.

The act of April 18, 1905, entitled "An Act to authorize the judges of the separate orphans' courts to hear and determine proceedings in equity at the request of the judges of the common pleas" is constitutional.

The said act has no bearing on the orphans' court itself nor does it in any way infringe on the constitutional province of that court.

Neither section 4 of article V of the judiciary article of the constitution, which provides that "until otherwise directed by law the courts of common pleas shall continue as at present established;" nor section 6 which directs that in Philadelphia and Allegheny counties each court "shall have exclusive jurisdiction of all proceedings at law and in equity commenced therein;" nor section 26 of the judiciary article prohibiting the creation of other courts "to exercise the powers vested by this constitution in the judges of the courts of common pleas and orphans' court;" nor section 20 of the judiciary article relating to the chancery powers of the common pleas; nor section 15 of the judiciary article which provides that "all judges required to be learned in the law . . . . shall be elected by the qualified electors of the respective districts over which they are to preside" is infringed by said act.

*Parent and child—Adoption—Intestacy—Grandchild.*

Where a grandfather adopts a grandchild, daughter of a deceased daughter, and dies intestate, the adopted grandchild inherits as a child only, and not in a double capacity as child and grandchild.

BROWN, MESTREZAT and STEWART, JJ., dissent on the question of constitutionality.

Argued May 23, 1905. Reargued Oct. 9, 1905. Appeal, No. 100, Oct. T., 1905, by defendants, from decree of C. P. No. 2, Allegheny Co., April T., 1905, No. 186, on bill in equity in case of James W. Morgan v. Mary Olive Morgan Reel et al. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN, and STEWART, JJ. Affirmed.

Bill in equity for partition.

The case was heard by OVER, J., a judge of the orphans' court of Allegheny county, specially presiding at the request of the judges of the common pleas under the provisions of the act of April 18, 1905.

From the record it appeared that on March 24, 1870, Conrad

Reel died seized in fee-simple of certain real estate, and that on May 31, 1886, his widow died seized also of certain real estate in her own right. They left to survive them as heirs at law four children, Jacob G. Reel, Annie E. McGuire, John A. Reel and William H. Reel. John A. Reel died on January 24, 1893, leaving to survive him, as his heirs at law, a widow and seven children, all named as defendants in the bill. William H. Reel died on May 26, 1901, intestate, seized of the undivided one-fourth of the real estate of his father and mother. He left to survive him as his heirs at law, a widow, Catherine T. Reel, and two daughters, Stella C. Reel and Catherine Pauline Matthews, and two grandchildren, James W. Morgan and Mary Olive Morgan. These two grandchildren were the children of William H. Reel's deceased daughter, Rosanna. C. Morgan. On November 14, 1885, William H. Reel and his wife, Catherine T. Reel, by proper proceedings in the court of common pleas No. 1, at No. 578, December Term, 1885, adopted his said granddaughter, Mary Olive Morgan, under the name of Mary Olive Reel, she being then a minor about four years old. James W. Morgan filed this bill for the partition of the lands of his grandfather, Conrad Reel, and his grandmother, Rosanna Reel.

The court held that Mary Olive Reel, who was named as one of the defendants, was entitled only to a child's share of the estate of her adopted father, and was not entitled to share with her brother in the portion which their deceased mother would have taken if she had lived. The court also decided that Judge OVER had a right to hear the case.

*Error assigned* was the decree of the court.

*George H. Quaill,* for appellant.—The act of assembly under which the judge held court and exercised judicial functions in this case is unconstitutional.

Under our statutes of adoption and inheritance, when a person adopts his own grandchild, the minor child of his deceased daughter, the grandchild thus adopted shares in his estate, in case of intestacy, in the dual capacity of adopted child and grandchild : Clarkson v. Hatton, 143 Mo. 47 (44 S. W. Repr. 761) ; Com. v. Powel, 16 W. N. C. 297 ; Daisey's Est.,

15 W. N. C. 403 ; Rowan's Estate, 132 Pa. 299 ; Wagner v. Varner, 50 Iowa, 532.

In the absence of a statute to the contrary, an adopted child may inherit both from its adoptive parent and from or through its natural parent: Humphries v. Davis, 100 Ind. 274 ; Clarkson v. Hatton, 143 Mo. 47 (44 S. W. Repr. 761) ; Wagner v. Varner, 50 Iowa, 532.

*William H. McClung*, with him *Thomas D. Chantler* and *William M. McGill*, for appellee.—Express power is given to the legislature to enlarge or curtail the jurisdiction of the different courts established by the constitution : Com. v. Green, 58 Pa. 226 ; Com. v. Zephon, 8 W. & S. 382; Kilpatrick v. Com. 31 Pa. 198 ; Application of the President Judges, 64 Pa. 33.

The same person cannot, as to the legal descendants of his adopting parent, stand in the position of his son, and at the same time claim to inherit a portion of his property as his grandson : Delano v. Bruerton, 148 Mass. 619 (20 N. E. Repr. 308).

OPINION BY MR. CHIEF JUSTICE MITCHELL, October 30, 1905 :

1. The important public question in this case is the constitutionality of the Act of April 18, 1905, P. L. 208, " to authorize the judges of separate orphans' courts to hear and determine proceedings in equity at the request of the judges of the common pleas." Section 1 provides that " in addition to the powers now possessed and exercised by the judges of the separate orphans' courts of this commonwealth, said judges shall, when called upon by the president or other law judge of any court of common pleas, as hereinafter provided, have power to hear and determine all issues and other matters in equity so fully and effectually, as to dispose thereof in the same manner as may be done by the courts of common pleas or the law judges thereof sitting in equity, in accordance with the laws, rules, regulations and practice governing the exercise of equity jurisdiction in this commonwealth. And whenever any service shall be rendered, in pursuance hereof, by a judge of such orphans' court, he shall be deemed to be specially presiding in,

and to have the powers of, the court of common pleas of the proper county, sitting in equity." Other sections provide that the service shall not be compulsory on the judges of the orphans' court, and supply the necessary details for the working of the act.

A number of sections in the judiciary article of the constitution are referred to as being contravened by this act. Such as refer to the orphans' court may be dismissed without detailed notice. Notwithstanding the phraseology of the title and the first section that " the judges of the orphans' court are authorized," etc., the act has no bearing on the court itself. No interference or change is made in any way in the organization, jurisdiction, powers or practice of that court. There is merely a special grant of authority to the judges individually, not compulsory on them but to be exercised voluntarily under certain circumstances. The cases in which they sit by invitation remain in the common pleas where they were brought, and the records of the orphans' court take no notice of them. We must disregard, therefore, all suggestions of infringement on the constitutional province of the orphans' court.

Section 4 of art. V, the judiciary article of the constitution, provides that " until otherwise directed by law the courts of common pleas shall continue as at present established." This act is not an infringement of that section, for so far as it makes any change it is one " directed by law."

Section 6 directs that in Philadelphia and Allegheny counties each court " shall have exclusive jurisdiction of all proceedings at law and in equity commenced therein." There is no infringement of this provision, for as already said the common pleas retains the record and the jurisdiction of the cases and whatever is done by the special judge is done in that court.

The same consideration answers the citation of section 26 of the judiciary article prohibiting the creation of other courts " to exercise the powers vested by this constitution in the judges of the courts of common pleas and orphans' courts." No other or new court is created by the act.

Stress was laid in the argument on section 20 of the judiciary article that " the several courts of common pleas, besides the powers herein conferred, shall have and exercise, within their respective districts, subject to such changes as may be made

by law, such chancery powers as are now vested by law in the several courts of common pleas of this commonwealth or as may hereafter be conferred upon them by law." But it is not apparent how the act contravenes this section. It takes away no jurisdiction from the common pleas, nor vests any in the orphans' court, and if it did either or both, it would be within the proviso " subject to such changes as may be made by law." Indeed, the act may be wholly justified and sustained upon the equity feature of it. Subject to the constitutional guarantee of trial by jury, the jurisdiction, powers, practice and procedure in equity are inherently matters of legislative control, and are expressly recognized as such in the section quoted of the judiciary article. It is conceded that the legislature might confer a general jurisdiction in equity, concurrent with the common pleas, upon the orphans' courts. And if it might do so in general, as a whole, it is certain that it could do the same pro tanto as to cases it thought proper. As already shown no such change of jurisdiction in either court is in fact made by the act, though it might have been. But a settled and unquestionable part of the procedure in equity from its earliest days is the authority of the chancellor to avail himself of the assistance of examiners, masters and other quasi judicial officers in the disposition of cases pending before him. Until quite recently that was the general practice in Pennsylvania, and for the taking of evidence, investigation of facts, and report upon the law, cases were sent ordinarily and regularly to such officers. Except for the general equity rules now in force the court of common pleas might have referred this case to the judge of the orphans' court, with his consent, as examiner and master, and what the court might have done by rule or order the legislature might do by statute. In substance it has done nothing more by this act. The case remains in the common pleas, and the decree is the decree of the common pleas, sitting in banc after hearing upon exceptions to the report of the judge who conducted the trial. Had this been an action at law with a charge to a jury a larger question would have arisen on the right of the judge to sit, which will be considered under the next head, but the act is confined to cases in equity and as to them is clearly within the constitutional powers of the legislature.

The last provision to be noticed, and the only one really needing discussion, is section 15 of the judiciary article, that " all judges required to be learned in the law, . . . . shall be elected by the qualified electors of the respective districts over which they are to preside."

If this question were now presented for the first time we should be bound to say that it was one of quite serious difficulty, for the requirement of election of the judges by the electors of the district would seem to be a requirement of election by them to the very court in which his right to sit is challenged. But the historical view of the constitutional provisions on the subject, and the uniform course of decisions under them have clearly settled the principles we must now apply. Very interesting and instructive discussions of the legislative power of reorganization and control over the courts named and established by the constitution will be found in Com. v. Flanagan, 7 W. & S. 68 ; Com. v. Zephon, 8 W. & S. 382; Kilpatrick v. Com., 31 Pa. 198 ; Foust v. Com., 33 Pa. 338 ; Com. ex rel. v. Green, 58 Pa. 226 ; In re Application of President Judges, 64 Pa. 33 ; and Com. ex rel. v. Hipple, 69 Pa. 9.

The constitution of 1790, article V, section 4, provided that " until it shall be otherwise directed by law the several courts of common pleas shall be established in the following manner." The constitutions of 1838 and 1873 contained the same provisions. The same article in the constitutions of 1790 and 1838 provided (sec. 5) that the judges of the common pleas should be judges of the Oyer and Terminer for the trial of capital and other offenders, and " any two of said judges, the president being one, shall be a quorum," etc. Under these sections it was decided in the cases above referred to that the legislature could create a court of criminal sessions ; could afterwards abolish it and transfer its jurisdiction to the quarter sessions ; that it could authorize two judges of the common pleas (and afterwards a single judge), the president not being one, to hold the Oyer and Terminer ; that it could establish a special court of criminal jurisdiction within the territory of a judicial district of the common pleas ; and other changes not necessary to be specified here.

In sustaining the power to change the constitutional require-

ment that the president judge should be one of the quorum of
the Oyer and Terminer (Kilpatrick v. Com., 31 Pa. 198),
STRONG, J., said (p. 214): " the act is not an attempt to estab-
lish a new court, which the legislature are authorized to do by
the first section of the fifth article. If it be valid at all, it is
because it is a reorganization of the existing court of common
pleas, under the clause of the constitution which ordains that
' the courts of common pleas shall continue as at present estab-
lished, until otherwise directed by law.' The plaintiff in error
denies that the act is constitutional. We cannot regard this
as an open question. Whatever doubts we might have were
the question res nova (and speaking for myself I should have
many) we are not now at liberty to entertain them. The
validity of this act of assembly, as well as the intent of the
constitutional provisions have heretofore been authorita-
tively defined," citing the cases already referred to with
others.

The amendment of 1850 introduced the election of judges in
substantially the same terms as the present section 15 of the
judiciary article. Kilpatrick v. Com., 31 Pa. 198, was decided
after the amendment, but this question was not involved, as
both the associate judges who held the Oyer and Terminer
there had been elected by the electors of the district. In Com.
v. Green, 58 Pa. 226, however, the point was made, and SHARS-
WOOD, J., after noting that the letter of the constitution was
not violated, said : " But it is said that the spirit of it is violated
because while the court for Schuylkill county is made an active
and important tribunal, the provisions for the courts of Lebanon
and Dauphin are contingent and illusory. The justices of
Schuylkill county are commanded to make their returns to the
special court. A grand jury is to be summoned to act upon
the bills and other matters given them in charge, while the
jurisdiction in Dauphin and Lebanon is restricted to bills
found in the Oyer and Terminer and quarter sessions and
transferred to the special court at the option of the district at-
torney. Thus in effect the electors of Dauphin and Lebanon
choose the judge for Schuylkill. With the justice, wisdom or
policy of this legislation we have nothing whatever to do."
The act was held constitutional, and the decision was affirmed
and followed in Com. ex rel. v. Hipple, 69 Pa. 9, which was

a mandamus to the district attorney of Schuylkill county to perform his duties in the criminal court established by it.

The controlling case, however, is the application of President Judges, 64 Pa. 33, decided in 1870. The Act of April 2, 1860, P. L. 552, provided that where the president judge of any judicial district should be unable to hold the regular term of his courts he might call in any other president judge and that judge so called in should be authorized " to discharge the duties appertaining to said office as fully as the regularly commissioned president judge of said district could do if present." Two president judges, being unable to hold their courts, and their power to call in another to hold the Oyer and Terminer either being challenged or considered by themselves as doubtful, applied to the Supreme Court to assign one of its members for that purpose. The question of the extent of the requirements of the elective clause was thus directly raised. The act was held constitutional, AGNEW, J., saying : " This legislation is evidently a special organization of the several courts for necessary purposes, when the proper president judge is disabled, by the substitution of another judge in his place. Is this within constitutional power ? We think it is, whether the act be a reorganization, or the creation of a new court for special purposes. If anything can be considered as settled by judicial determination it is that another judge learned in the law can be substituted for the president of the court as judge of the court of Oyer and Terminer " and referring to the previous cases, cited supra, he added, " The reasoning on which these decisions rest is incontrovertible," p. 35. " In such a case it is only the organization of the court which is changed by the substitution of one president for another. Now the power to substitute is the very point decided in the cases of Zephon, Kilpatrick and Foust, where it was held that an associate judge, learned in the law, could constitutionally take the place of the president. Whatever might have been the impression of any one formerly on this question, the point is conclusively adjudged," p. 37. And in the same case Chief Justice THOMPSON, in a concurring opinion, after referring to his dissent in Com. v. Kilpatrick, and the other cases, said : " I am not satisfied of error yet ; but I must admit that the

law is at present conclusively settled against me, and I am as every other citizen bound by it."

The elective clause of the constitution was not specifically discussed in the opinion, but it was directly and necessarily involved in the case and in view of Chief Justice Thompson's reluctant concurrence we are not at liberty to assume that so obvious and serious an objection was not considered and meant to be decided. We must concur with him that the case is of binding authority, and that the law is "conclusively settled."

It is to be said for the act of 1905 that it nowhere indicates any intent to transgress the constitution, to impair or restrict the powers of any constitutional court, or to impede or diminish the rights of electors. On the contrary, it is a bona fide effort for the relief of temporarily congested and overburdened court lists, without permanently burdening the judicial establishment of the state with officers who may not be permanently required. It is certainly in accord with the spirit of the constitutional control by the legislature over the organization of existing courts, and the creation of new ones. As such all presumptions are in its favor. Viewed in this light, and under the authority of the preceding decisions, we must regard it as a valid special reorganization of the courts of common pleas for the disposition of cases under special and exceptional circumstances.

2. The further question raised by this case depends on the statutes for the adoption of children. Where a grandfather adopts a grandchild, daughter of a deceased daughter, and dies intestate, does the adopted grandchild inherit as a child only or in a double capacity as child and grandchild? The Act of May 19, 1887, P. L. 125, after prescribing the conditions and mode of adoption, and, inter alia, that the adopted child "shall have all the rights of a child and heir of the adopting parent" continues "provided, that if such adopting parent shall have other children, the adopted shall share the inheritance only as one of them ; in case of intestacy, he, she, or they, shall respectively inherit from and through each other as if all had been the lawful children of the same parent."

The adopted child does not stand on the full footing of an actual child even as to his legal rights. He has only such rights as the statute clearly gives him. This has been uni-

formly held, with much strictness, not only under this act but also under the prior acts on the same subject. Thus it was held that a devise from the adopting parent to the adopted child is not exempted from collateral inheritance tax : Com. v. Nancrede, 32 Pa. 389 ; Com. v. Ferguson, 137 Pa. 595 ; though it may be so if the special statute authorizing the adoption, clearly so intends : Com. v. Henderson, 172 Pa. 135. And a devise to the children of A does not include adopted children : Schafer v. Eneu, 54 Pa. 304.

The act of 1887 intended to put the adopted child on the same footing as actual children, if such there should 'be, but not on any more favorable footing. This would be the natural and presumed intent, but it is put beyond question by the proviso. Having enacted that the adopted child shall have " all the rights of a child and heir," the framers of the act, apparently out of caution lest the word " heir " should seem to give a preference over other children, added the proviso that he should inherit " only as one of them." The act did not apparently contemplate, certainly did not expressly provide, for the case of the adoption of a grandchild, but the plain intent that the status of the adopted child should be equal but not superior to that of the others is enough to settle the question.

Had William H. Reel died intestate just before his adoption of the appellant his estate would have descended to three stocks, to wit : one-third to each of his daughters, Stella and Catherine, and one-sixth to each of his grandchildren, the plaintiff and appellant, children of his deceased daughter. By his adoption of the appellant he transferred her from the class of grandchildren to the class of children, and her status in the former was merged in her status in the latter. When he died thereafter his estate descended to four stocks, one-fourth to each of his actual daughters, another fourth to his adopted daughter, the appellant, and the remaining fourth to the plaintiff as representative of his deceased mother. Thus and thus only can the equality intended by the statute be maintained.

Decree affirmed.

Mr. Justice Brown, dissenting :

As a rule, it is better that a member of a court of last resort, not concurring in the view of the majority, confine, if pos-

sible, his dissent to the consultation room. This is especially true in the disposition of constitutional questions, which are always important. But there are times when public dissent cannot be withheld without being misunderstood, and, as I am unwilling to be understood as concurring in the view of the majority of my brethren in this case, I must dissent of record, and briefly state my reasons for doing so.

By section 22 of the judiciary article of the constitution, creating separate orphans' courts, it is provided that they are to exercise all the jurisdiction and powers vested in orphans' courts at the time of the adoption of the constitution, and, in addition, such as might thereafter be conferred. The act of 1905 confers no jurisdiction or powers upon separate orphans' courts. These are just what they were before the passage of the act, and the judges of the separate orphans' courts can now do nothing in their own courts that they could not have done prior to April 18, 1905; but, when transplanted into the equity side of a court of common pleas by the process pointed out by the act, a judge of the orphans' court becomes, so long as he remains there, a judge of that court. The words of the act are, that while sitting in the common pleas at the invitation of one of its judges, " he shall be deemed to be specially presiding in, and to have the powers of, the court of common pleas of the proper county, sitting in equity." When this was enacted, section 15 of the same article of the constitution was either overlooked or forgotten. It declares that " all judges required to be learned in the law, except the judges of the supreme court, shall be elected by the qualified electors of the respective districts over which they are to preside." The common pleas is recognized by the constitution as a distinct court from a separate orphans' court, and the words of the 15th section of the judiciary article mean that the judges of the common pleas shall be elected as such by the qualified electors of the district over which they preside; and so of the judges of the separate orphans' courts. How, then, can one sit on the judgment seat of the common pleas unless he is sent to it as one of its judges " by the qualified electors "? The constitution declares that to be the only way in which a seat there can be reached, and the legislature cannot point out any other. It may modify and change the jurisdiction and powers of the

court of common pleas, but it cannot change the mode of the selection of its judges. If the legislature can authorize a judge of the common pleas to call an orphans' court judge to his assistance as a temporary part of his court, why can it not authorize the calling of any member of the bar for such a purpose? If allowed to sit in the common pleas as one of its judges, a judge of the orphans' court will not be there simply as an examiner or master to aid that court, but as a component part of it, and, when sitting or presiding alone, the court itself. Even if the legislature could direct an orphans' court judge to sit and act as a judge of the common pleas, it has not undertaken to do so, but has committed or delegated to a common pleas judge the power to create, for the time being, out of an orphans' court judge a judge of his own court and to clothe him with all of his equity powers and jurisdiction. If for no other reason, for this delegation of power, which, if it existed at all, would be in the legislature alone, not to be delegated by it to any one, the act ought not to be sustained.

It is true that the Act of April 2, 1860, P. L. 552, providing that a president judge in any judicial district in the state may call in another judge to hold courts for him, was sustained, but the cases sustaining it are certainly not to be stretched in view of what has been said of them, and in citing them as authority for the constitutionality of this act, it has been entirely overlooked that under that act, when one judge calls in another to hold court for him, the judge called has in his own court, to which he was elected by the qualified electors, the same jurisdiction and powers that the calling judge possesses, and into the court outside of his district the invited judge takes with him all the powers which he possesses in his own court; but not so here. In his own court the orphans' court judge has no more jurisdiction over a bill in equity for a decree for specific performance of a contract between living parties than a justice of the peace; but by the act of 1905, when he gets into the common pleas, he at once acquires all of its equity powers.

The spectacle of a judge of a separate orphans' court sitting in the common pleas under the act of 1905 is truly anomalous. He is not a common pleas judge, for he was not elected as such, and, therefore, possesses none of the powers of such a judge. In his own court he cannot do what he does in the court into

which he goes, for in his own court he has no such jurisdiction and powers, even under the act of 1905, as he exercises in the common pleas. This is a situation not only not contemplated by the constitution, but in clear violation of it.

MESTREZAT and STEWART, JJ., concur in the dissent.