# Commonwealth, Appellant, *v.* Persch (No. 1).

*Constitutional law—Municipal Court of Philadelphia—Committing magistrates—Act of July 12, 1913, Sec. 11, P. L. 715.*

1. There is nothing violative of the Constitution in Sec. 11 of Act of July 12, 1913, creating the Municipal Court of Philadelphia, which provides, inter alia, that "the judges of the said Municipal Court shall be ex officio justices of the peace."
2. A judge of the Municipal Court of Philadelphia is ex officio a committing magistrate.

Argued Oct. 14, 1918. Appeal, No. 166, October T., 1918, by Commonwealth, from the order of Q. S. Philadelphia Co., Dec. Sessions, 1917, No. 594, quashing indictment in case of Commonwealth v. George A. Persch. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Indictment for embezzlement.
The facts are stated in the opinion of the Superior Court.

*Error assigned* was order quashing indictment.

*Joseph H. Taulane,* Assistant District Attorney, and with him *Samuel P. Rotan,* District Attorney, for appellant.—A judge of the Municipal Court of Philadelphia

County has authority to sit as a committing magistrate: Act of July 12, 1913, P. L. 715; Article V, Sec. 1, Constitution of Pa.; Commonwealth v. Weiner, 67 Pa. Superior Ct. 558.

Section 11 of the Act of July 12, 1913, does not violate Sec. 26, Art. V, of the Constitution: Gerlach v. Moore, 243 Pa. 603; Philadelphia & Reading Railway Company v. Walton, 248 Pa. 381; Commonwealth v. Smith, 185 Pa. 553; Rose v. Commonwealth, 15 Pa. 171; United States v. Hughes, 70 Fed. Rep. 972; Cahill's Petition, 110 Pa. 167; Commonwealth v. Hopkins, 241 Pa. 213; Commonwealth v. Supt. of House of Correction, 64 Pa. Superior Ct. 614.

*John R. K. Scott* and *William T. Connor,* for appellee. —The president judge of the Municipal Court had no right to sit as a justice of the peace and the bills of indictment should have been quashed: Sec. 26, Art. V, of the Constitution of Pa.; Gottschall v. Campbell, 234 Pa. 347; Commonwealth v Hopkins, 53 Pa. Superior Ct. 16; Commonwealth v. Edmiston, 30 Pa. Superior Ct. 54.

OPINION BY HEAD, J., January 3, 1919:

The court below quashed a bill of indictment that had been found by the grand jury. From that order the Commonwealth appeals. The material facts upon which the court based its conclusion are thus briefly stated in the opinion filed in support of the order appealed from: "A warrant was issued in the above case by President Judge BROWN of the Municipal Court for the arrest of the defendant. Subsequently President Judge BROWN sitting as a justice of the peace held a preliminary hearing and bound the defendant over to answer. Upon the return of the proceeding bills were presented to the grand jury who indicted the defendant, etc. The question in this case is whether President Judge BROWN had the right to sit as a justice of the peace. If he had not,

then the subsequent proceedings are void and the bills of indictment should be quashed.  If he had a right to sit as a justice of the peace, then the bills are valid."

The Act of 1913 creating the Municipal Court as amended by the Act of 1915 provides, inter alia, "The judges of the said Municipal Court shall be ex officio justices of the peace."  If then the conclusion reached by the learned court below be sound it must be because the legislature overstepped its constitutional power in the enactment of the provision of the statute just quoted.

Section 26, Article V, of the Constitution of 1874 declares, "The General Assembly is hereby prohibited from creating other courts to exercise the powers vested by this Constitution in the judges of the Courts of Common Pleas and Orphans' Courts."  Section 9 of the same article had already declared that "Judges of the Courts of Common Pleas......within their respective districts shall be justices of the peace as to criminal matters."  From a consideration of these two sections of Article V, the learned trial judge determined the legislature was without power to validly enact the portion of the statute we have quoted.  The bills were therefore quashed.

We suppose it would not be seriously contended our Courts of Common Pleas were created by the Constitution of 1874, or indeed by the earlier ones that preceded it.  They were existing recognized institutions when what is commonly, although inaccurately, called our first Constitution (1776) was written.  It declared in the "Plan or frame of government," under which our people lived until 1790, that "the Supreme Court, and the several Courts of Common Pleas of this Commonwealth, shall, besides the powers usually exercised by such courts, have the powers of a court of chancery," etc.  There are many powers now possessed by Courts of Common Pleas and the judges thereof, the origin of which must be sought far back of any Constitution or Statute of this State.  They are classified in the language above quoted as the powers "usually exercised by such courts."  If at

any time in the history of the Commonwealth a new Constitution should clearly take away from courts any power theretofore "usually exercised by such courts" we would have a different question. If it does not the power continues to exist as if no constitutional convention had assembled. In a word, we do not necessarily begin anew every time our Constitution is rewritten for the purpose of curing certain defects or correcting certain abuses that have become manifest because of changed conditions resulting from the wonderful growth and development of our people.

Now before turning to an examination of Section 26 of Article V, let us consider for a moment the light in which it should be studied and construed. In quite recent years the legislature, in response to a wide spread demand for relief from the delay in the trial of causes— necessarily resulting from the great increase of litigation clogging the dockets of the Courts of Common Pleas— created two new courts of a class or grade different from those of any court existing at the time of the adoption of our present Constitution. We refer, of course, to the Allegheny County Court and the Municipal Court of Philadelphia. The power of the legislature to create such courts and invest them with jurisdiction theretofore residing in the Courts of Common Pleas or Quarter Sessions was seriously and vigorously challenged. Section 26 of Article V, of our present Constitution loomed large in the argument of the cases. It has been settled that the statutes creating these courts and defining their jurisdiction were not violative of the Constitution: Gottschall v. Campbell, 234 Pa. 347; Commonwealth v. Hopkins, 241 Pa. 213; Gerlach v. Moore, 243 Pa. 603; Railway Co. v. Walton, 248 Pa. 381. The following quotation from the opinion of the late Justice ELKIN in Gerlack v. Moore, supra, may fittingly close this branch of the discussion: "The basic principle of these decisions was that the Constitution in express language gave the legislature power to create from time to time courts

other than those enumerated in the organic law, and this power having been expressly conferred in the first section of the judiciary article, nothing contained in the subsequent sections of the article dealing with the organization, jurisdiction and powers of courts, was sufficient to deprive the legislative branch of government of the power to create courts of a different class or grade from those expressly enumerated. The power to create 'such other courts as the general assembly may from time to time establish' is the same in the Constitution of 1790, 1838 and 1874. Under the earlier constitutions this power was challenged by proceedings in court, as it is now, but this court consistently held the view that the legislature had the power to divest the courts enumerated in the Constitution of some of their jurisdiction and vest it in courts from time to time established, or may vest a limited concurrent jurisdiction in courts thus created: Com. v. Zephon, 8 W. & S. 382; Com. v. Martin, 2 Pa. 244; Com. v. Green, 58 Pa. 226; In re Application of Judges, 64 Pa. 33; Com. v. Hipple, 69 Pa. 9."

Let it be noted the legislative enactment here assailed takes away from no court or judge thereof the right to exercise any function or power theretofore lawfully exercised by such court or judge. The mere fact that other persons might be duly authorized to sit as committing magistrates could be no such deprivation unless it may be successfully argued that it is declared in our basic law that such power exclusively and unchangeably must reside only in the judges of the Common Pleas or Quarter Sessions and in none other. Such a position would be clearly untenable as the Constitution itself recognizes in terms the existence of an indefinite number of magistrates whose titles and whose functions, quoad preliminary hearings in criminal cases, are as old as the common law. Could the number of magistrates, justices of the peace in the Commonwealth, be lawfully increased by the legislature? Section 11 of Article V, answers that such increase, made in the manner therein stated, would

rob no court or judge thereof of any power vested in them by the Constitution.

Was any assault upon the vested rights of any court or judge thereof committed when the legislature authorized judges of the Orphans' Court under certain conditions to sit as judges of the Common Pleas and try and determine all manner of causes cognizable by the last named courts? Can it be soundly urged the legislature is without power to authorize, for instance, the mayors of cities to sit as magistrates and conduct preliminary hearings of those chargeable with crimes alleged to have been committed within the city limits? To so hold would seem to necessarily lead to the conclusion that the people of the State, in adopting the Constitution they had written, chose to simply congeal or petrify the things that then were rather than to protect and safeguard the recognized rights of individuals or local communities from invasion from any source. Much might be added in support of the conclusion we reach but enough has been said to indicate why we determine the enactment complained of was not a violation of the spirit of Article V, Section 26.

It is plain enough it was not in any way a legislative sin against the letter of the fundamental law. The legislature is "prohibited from creating other courts to exercise the powers," etc. In the case before us we have not to deal with powers conferred upon a court but upon certain individuals designated and identified as those who may be or become judges of the Municipal Court. We are all of the opinion the enactment in question was a valid exercise of legislative power. The remaining question raised by the appeal need not be considered.

The order of the court below quashing the indictment is reversed and set aside and the record is remitted to that court with a procedendo.