# Commonwealth *v.* Hopkins, Appellant.

*Constitutional law—Courts—County court for Allegheny county—Desertion—Act of May 5, 1911, P. L. 198.*

1. The Allegheny County Court Act of May 5, 1911, P. L. 198, does not violate the first clause of sec. 26, art. V, of the constitution of Pennsylvania which provides that "all laws relating to courts shall be general and of uniform operation, and the jurisdiction and powers of all courts of the same class or grade shall be uniform."

2. The Allegheny county court act in so far as it confers exclusive jurisdiction upon the county court of Allegheny county in desertion cases, does not take away from the court of quarter sessions any constitutional power theretofore lodged in it, and does not violate sec. 26, art. V, which provides that "And the General Assembly is hereby prohibited from creating other courts to exercise the powers vested by this constitution in the judges of the courts of common pleas and orphans' court."

3. The constitution having neither defined nor limited the jurisdictions of the courts named therein, or those to be afterwards established, the power to create new courts and new law judges carries with it the power to invest them with such jurisdictions as appear to be necessary and proper, and to part and divide the judicial powers of the state so as to adapt them to its growth and change of circumstances.

*Husband and wife—Desertion—Residence of wife—Form of order.*

4. The court in making a support order on a husband who has refused to support his wife and children, may direct that the money shall be paid by check to the wife at a place in another state where the wife has taken up her residence with her minor children.

Argued Oct. 21, 1912. Appeal, No. 78, April T., 1913, by defendant, from order of County Court of Allegheny County, No. 303, 1912, Commonwealth Docket, awarding support in case of Commonwealth v. Andrew Hopkins. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Proceedings for support.

From the record it appeared that at the time of these proceedings Florence S. Hopkins, the wife of Andrew Hopkins, had her residence with her four minor children, in Ohio. The case turned chiefly upon the constitutionality of the Allegheny County Court Act of May 5, 1911, P. L. 198.

The court made the following order:

And now, to wit, June 24, 1912, after hearing, the defendant, Andrew S. Hopkins, is ordered to pay to Florence S. Hopkins the sum of $40.00 per month for the support of his four minor children, said money to be paid to Florence S. Hopkins by check to her residence in Ohio at the end of each month, beginning June 30, 1912. It is further ordered that defendant pay costs and enter into own recognizance in the sum of $1,000 to comply with the above order, and on the failure of defendant to make payment as above ordered, an attachment shall issue forthwith for cause shown by said probation officer

*Error assigned* was the order of the court.

*George H. Quaill* and *David L. Starr*, for appellant.— The act is unconstitutional: Morgan v. Reel, 213 Pa. 81; Philadelphia v. Haddington M. E. Church, 115 Pa. 291; Ruan Street, 132 Pa. 257; Wyoming Street, 137 Pa. 494; Pittsburg's Petition, 138 Pa. 401; Com. v. Mathues, 210 Pa. 372; Ayars's Appeal, 122 Pa. 266; Safe Deposit & Trust Co. v. Fricke, 152 Pa. 231; Van Loon v. Engle, 171 Pa. 157; McKay v. Trainor, 152 Pa. 242; Com. v. Zephon, 8 W. & S. 382; Kilpatrick v. Com., 31 Pa. 198; Com. v. Green, 58 Pa. 226; In re Application of Judges, 64 Pa. 33; Com. v. Conyngham, 65 Pa. 76; Com. v. Hipple, 69 Pa. 9; Com. v. Swank, 79 Pa. 154; Com. v. Potts, 79 Pa. 164.

The court below had no jurisdiction in this case because of the nonresidence of the parties for whose sole benefit the proceedings were instituted: Burginhofen v. Martin, 3

Yeates, 479; Dumber v. Jones, 1 Ash: 215; Ohio & Pa. R. R. Co. v. Brittain, 1 Pitts. 271; McMullen v. Orr, 8 Phila. 342; Mill Creek Road Commissioners v. Fickinger, 51 Pa. 48; McNaught v. Swing, 1 Chest. County, 467; Warren v. Wells, 3 Luz. Leg. Reg. 111; Adams v. Hill, 29 Leg. Int. 126; Phila. v. Bailey, 8 Phila. 485; Demott v. Com., 64 Pa. 302; Com. v. Wilmarth, 7 Luz. Leg. Reg. 197.

*Ward Bonsall*, with him *J. L. Ritchey*, for appellee, cited as to the constitutionality of county court in desertion cases: Gottschall v: Campbell, 234 Pa. 347; Demott v. Com., 64 Pa. 302; Com. v. Tragle, 4 Pa. Superior Ct. 159.

Cited as to the residence of the parties: Com. v. Dilks, 45 Pa. Superior Ct. 339; Com. v. Wilmarth, 7 Luz. Leg. Reg. 197; Com. v. Douglass, 32 Pitts. Leg. J. 368; Keller v. Com., 71 Pa. 413; Extradition Case, 9 Pa. C. C. Rep. 27; Com. v. Hart, 12 Pa. Superior Ct. 605.

OPINION BY HEAD, J., February 27, 1913:

Following a hearing in the county court of Allegheny county, the defendant appellant was ordered by that court to pay the sum of $40.00 per month "for the support of his four minor children," etc. From that order he appeals. His principal assignment of error is "the court erred in assuming jurisdiction in this case."

Whether or not the county court was lawfully invested with jurisdiction to hear and determine a desertion case could not, we think, depend on the form of the recognizance entered into by the appellant before the magistrate who took the information and issued the warrant of arrest. That recognizance, it is true, obliged the defendant to appear at the next term of the court of quarter sessions. It would not have been adequate to compel his appearance in the county court. But he did appear there in person and by counsel and had his case heard on its merits. If then that court had, under the law,

jurisdiction of his cause, he cannot be heard now to complain that it had none of his person.

Had the county court jurisdiction of his cause? It is conceded that since the decision in Gottschall v. Campbell, 234 Pa. 347, it cannot here be successfully argued the legislature overstepped any constitutional limitation of its powers in creating that court. It is further conceded the act creating the court expressly conferred upon it jurisdiction to hear and determine desertion cases. To deny the jurisdiction thus expressly conferred is necessarily to assert the lack of power in the legislature to do what it had clearly undertaken to do. The supporting argument chiefly rests upon both clauses of sec. 26 of art. V of the constitution, and may thus be briefly and fairly stated:

(a) It is not competent for the legislature to so legislate that, for instance (we use the illustration of the appellant's brief), the court of quarter sessions of Beaver county should possess and exercise powers the court of quarter sessions of Allegheny county may not possess and exercise.

(b) When jurisdiction had been, prior to the constitution of 1874, conferred by the legislature on any of the courts expressly recognized in that instrument, such powers are, by force and effect of the constitution itself, permanently and finally lodged in such courts or the judges thereof and may not be transferred, by subsequent legislation, to a different court or the judges constituting the same.

1. Much of the strength of the appellant's argument, on the first proposition stated, is but a repetition of what was unsuccessfully urged upon the Supreme Court in Gottschall v. Campbell, 234 Pa. 347. It is true that, owing to the unusual manner in which the question was raised in that case, it was not necessary for the Supreme Court to determine the exact nature or extent of the jurisdiction which had been conferred upon the new court created by the Act of May 5, 1911, P. L. 198. The real question raised by that record was answered when it was determined that

it was competent for the legislature to create the county court and, therefore, the proper authorities of the county could not be enjoined from providing suitable accommodations for the transaction of the public business of the new court. But it was clearly and forcibly pointed out in the opinion of Mr. Justice POTTER that the statute creating, as it did, a new court for Allegheny county alone, was not in violation of the first clause of sec. 26. It was shown that the constitution itself so classified the counties of Philadelphia and Allegheny, that acts of the legislature affecting only the courts of either one of those counties were still general and not special legislation. Therefore they could not be successfully assailed merely because their result would be that such county would possess courts that did not exist in other counties, or that thereafter the jurisdiction of the court of quarter sessions, for instance, in such county might be different from that appertaining to courts of quarter sessions in the remaining counties of the state. We can see no necessity for now repeating or elaborating the reasoning of the Supreme Court on this branch of the case.

2. The act of 1911 not only conferred upon the new court jurisdiction of what may be called, for the sake of brevity, desertion cases, but declared that such jurisdiction should be exclusive in that court. The result of this legislation would be, it is argued, to take away from the court of quarter sessions of Allegheny county some constitutional power theretofore lodged in it and the statute, to this extent at least, would be in contravention of the second clause of sec. 26, art. V. We quote it: "And the general assembly is hereby prohibited from creating other courts to exercise the powers vested by this Constitution in the judges of the courts of common pleas and orphans' courts." A brief consideration of the question along somewhat broad lines will indicate the reasons for our conclusion on the question now immediately before us.

Article V of the constitution deals with the judicial branch of our government. It contains twenty-seven

separate sections. It opens with the declaration that "the judicial power of this commonwealth shall be vested in" the several courts therein designated "and in such other courts as the general assembly may from time to time establish." Here then is a clear and express recognition of the legislative right to create "other courts." When lawfully created they take their place in the class of courts in which "the judicial power of this commonwealth shall be vested." From the expressly recognized right to create new courts we naturally and necessarily deduce the further legislative right to define the jurisdiction of the courts created save in so far, and so far only, as such right may be denied or limited by the constitution itself. Certainly that instrument does not undertake to define or describe affirmatively what jurisdiction or powers the legislature may confer upon the courts which it may from time to time establish. How far does it prohibit legislative action in this direction?

We have quoted the clause which prohibits the general assembly "from creating other courts to exercise the powers vested by this constitution in the judges of the courts of common pleas and orphans' courts." What is the nature of the powers thus referred to as being vested by the constitution in the judges of the courts named? We have seen the declaration in the first section of the article that the judicial power of the commonwealth shall be vested in, inter alia, courts of common pleas and courts of quarter sessions of the peace. The legislature may not therefore deny to these courts their proper share in the judicial power of the state. Section nine provides that "judges of the courts of common pleas learned in the law shall be judges of the courts of oyer and terminer, quarter sessions of the peace," etc. The legislature may not say otherwise. Section ten affirms the right, in the judges of the common pleas, to issue writs of certiorari to magistrates and inferior courts not of record, and this right the legislature must respect. These sections, and one or two more that might be quoted, clearly indicate the in-

tent of the framers of the constitution to deal only with a few matters that were considered fundamental and, only in such respects, did the constitution itself vest in the courts named or the judges thereof powers, which it finally declared the legislature might not thereafter take from them. But the article as a whole is pervaded with repeated recognitions of the right of the legislature, as occasion might arise, to deal with the structure and jurisdiction of the courts and to alter and change the procedure therein. A construction of sec. 26 which would deny to the legislature the right to take away from the court of quarter sessions the power to grant liquor licenses, or to open and vacate roads and highways, and vest such power, by general law, in some other tribunal, would make it impossible for our people to live under a written constitution. It is certainly no new doctrine to hold that legislation of that character has always been regarded as within the powers of the general assembly.

In discussing how far a legislative act might interfere with the exercise of powers theretofore vested in the Supreme Court, it was said, many years ago, by Chief Justice TILGHMAN: "It is contended that the constitution secures to this court every power which they had been accustomed to exercise. If so, it also secures to the courts of common pleas all the powers which they had exercised. I think the argument will prove too much. It cannot reasonably be supposed that the powers exercised by all these courts were of so perfect a nature as to make it worth while to guard them by a fundamental article. On the contrary, to every man of reflection, it must have been evident, that in the course of time some alterations in these powers would be necessary; and that an attempt to render them unchangeable must end in the destruction of the constitution itself." This language was quoted with approval by Mr. Justice SHARSWOOD in Commonwealth v. Green, 58 Pa. 226. That distinguished judge then goes on to say: "The legislature could vest any portion of the jurisdiction of the orphans' court in a single judge of another court;

for example, the auditing of all accounts of guardians, executors and administrators. So in like manner, road, settlement and desertion cases might be taken from the quarter sessions and vested in a new court with a single judge. The statute book abounds with instances in which this power has been exercised without question."

In Commonwealth v. Hipple, 69 Pa. 9, Mr. Justice AGNEW said: "The constitution having neither defined nor limited the jurisdictions of the courts named therein, or of those to be afterwards established, the power to create new courts and new law judges carried with it the power to invest them with such jurisdictions as appear to be necessary and proper, and to part and divide the judicial powers of the state so as to adapt them to its growth and change of circumstances."

In Morgan v. Reel, 213 Pa. 81, Chief Justice MITCHELL, in considering the Act of April 18, 1905, P. L. 208, authorizing the judges of separate orphans' courts to hear and determine proceedings in equity, etc., had occasion to examine the various sections of the judiciary article as they affected the right of the legislature to alter and change from time to time the organization and jurisdiction of the several courts. He says, speaking for the court: "Stress was laid in the argument on sec. 20 of the judiciary article that 'the several courts of common pleas, besides the powers herein conferred, shall have and exercise, within their respective districts, subject to such changes as may be made by law, such chancery powers as are now vested by law in the several courts, &c.' But it is not apparent how the act contravenes this section. It takes away no jurisdiction from the common pleas, nor vests any in the orphans' court, and if it did either or both, it would be within the proviso 'subject to such changes as may be made by law.'" Even in the dissenting opinion filed in that case by Mr. Justice BROWN it is agreed, "It (the legislature) may modify and change the jurisdiction and powers of the court of common pleas, but it cannot change the mode of the selection of its judges."

In discussing the right conferred by the Act of May 29, 1901, P. L. 327, upon courts of quarter sessions to issue restraining orders in the nature of injunctions, HENDERSON, J., speaking for this court in Commonwealth v. Andrews, 24 Pa. Superior Ct. 571, said: "Judicial power is vested in the court of quarter sessions by sec. 1 of art. V of the constitution, but the jurisdiction of the court is not defined therein. Its jurisdiction is fixed by the common law and the statutes declaring its powers. It is clearly within the power of the legislature to enlarge or restrict that jurisdiction."

We have thus seen that under earlier constitutions the right of the legislature to change the organization and powers of existing courts has been fully considered and recognized. The framers of our present constitution were familiar with the landmarks that had been set up to define the only limitations upon legislative action. In rewriting the fundamental law they contented themselves with a few declarations as to the rights or powers that should unchangeably reside in designated courts or judges thereof. In respect to these and these only was the general assembly prohibited from interfering, and thus the later decisions have discovered no sufficient cause for departure from the sound reasoning of the earlier ones.

The constitution conferred no power on the court of quarter sessions to hear and dispose of desertion cases. It set up no barrier in the way of the legislature creating a new court and conferring upon it jurisdiction to determine such cases. We must therefore hold that the county court of Allegheny county had jurisdiction to make the order appealed from.

Nor can reversible error be found in the form of the order. The appellant asserts that he is and has always been a citizen of Pennsylvania. It has not been judicially ascertained in any proper proceeding that even his wife has lost the citizenship which was formerly hers; much less that his minor children, for whose benefit the order appears to have been primarily made, ought to be de-

prived of the remedy provided by our statute because of the marital difficulties of their parents.

The assignments of error are overruled and the order of the court below is affirmed.

PORTER, J., dissents.

ORLADY, J., dissents only as to the form of the order.