# Commonwealth, ex rel., Appellant, *v.* Superintendent of House of Correction.

*Criminal law—Street walking—Jurisdiction of courts—Municipal Court—Act of June 17, 1915, P. L. 1017—Statutes—Repeal—Words and phrases—"Exclusive."*

Under the Act of June 17, 1915, P. L. 1017, the Municipal Court of Philadelphia County has exclusive jurisdiction in all proceedings concerning, or trials of charges brought against all persons, whether adults or minors, accused of disorderly street walking. The Act of June 17, 1915, repeals the Act of June 2, 1871, P. L. 1301, in so far as the latter act gives jurisdiction in such case to magistrates or justices of the peace in the City of Philadelphia.

A subsequent statute revising the whole subject-matter of a former statute, and evidently intended as a substitute for it, al-

though it contains no express words to that effect, operates to repeal the former.

The word "exclusive" in its usual and generally accepted sense, means,—possessed to the exclusion of others; appertaining to the subject alone, individual, sole; to confer exclusive jurisdiction on one court deprives all other courts of such jurisdiction, whether therefore exclusive or concurrent, conferred by statute.

Argued Oct. 6, 1916. Appeal, No. 283, Oct. T., 1916, by plaintiff, from order of Q. S. Philadelphia Co., February Sessions, 1916, remanding defendant in habeas corpus proceedings in case of Commonwealth, ex rel., Florence Wilson v. Superintendent of House of Correction, Employment and Reformation for Adults and Minors. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Petition for habeas corpus.

The case turned as to whether the magistrate who committed the respondent as a disorderly street walker had jurisdiction to do so, or whether the Act of June 2, 1871, P. L. 1301, on which the jurisdiction was claimed had been repealed by the Act of June 17, 1915, P. L. 1017.

The court in an opinion by DAVIS, J., made the following order: And now, to wit, this 20th day of May, 1916, upon consideration of the petition and answer in the above entitled matter, it is ordered and decreed that the Act of 17th June, 1915 (P. L. 1017), does not repeal the Act of 2d June, 1871 (P. L. 1301) ; and it is further decreed that the authority of magistrates to commit disorderly street walkers to the House of Correction and the jurisdiction of the Court of Quarter Sessions have not been divested by the Act of 1915 and it is ordered,, directed and decreed that the petition be dismissed and the relator be remanded.

*Error assigned* was the order of the court quoting it.

*George Quintard Horwitz* and *James Gay Gordon,*

with them *William F. Rorke,* for appellant.—The contention of this appellant is that by the use of this word "exclusive," giving to the Municipal Court original jurisdiction of "all proceedings concerning, or trials of charges brought" against street walkers, the legislature meant that it should have jurisdiction of everything properly pertaining to these matters, that could be cognizable in such a court, to the exclusion of all other courts, whatever may have been the condition of legislation prior to the passage of the act.

This is the meaning put upon this word by the courts of other commonwealths when considering the use of the word "exclusive" in reference to court jurisdiction: Watson v. Henderson, 98 Arkansas 63; Hutkoff v. Demorest, 103 N. Y. 377.'

When the legislature gave to the Municipal Court exclusive jurisdiction over this class of offenders, there was nothing to show but that it was the intention of the legislature to prevent the committing of these women to the house of correction. The Municipal Court is not bound to send women to the house of correction in order to punish them. Therefore, when the legislature said that the jurisdiction in the Municipal Court should be "exclusive," there is no reason why it should not be assumed that the legislature intended that the Municipal Court should deal with these women without sending them to the house of correction: Com. v. Hopkins, 53 Pa. Superior Ct. 16; Gerlach v. Moore, 243 Pa. 603.

*Thomas James Meagher,* for appellee.—It is purposed to consider what is meant by disorderly street walking and to show that it was a common law misdemeanor. It has been defined by our courts and it means a street walker who, at the time in question, is engaged on the highway in the plying of her trade. Another name for it at common law was "night-walker" or "common night-walker": Commonwealth, ex rel., Miller v. Superintendent of House of Correction, 19 Pa. District 1054;

Com., ex rel., Epstein v. Superintendent of House of Correction, 19 Pa. Dist. 1049; Com., ex rel., Kelly v. Superintendent of House of Correction, 22 Pa. Dist. Rep. 92; State v. Dowers, 45 N. H. 543.

Indeed, it seems clear that disorderly street walking is only a particular form of the recognized generic common-law crime recognized in Pennsylvania of indictable disorderly conduct on the highway tending to the corruption of public morals or the like. See in this connection our Pennsylvania cases of Commonwealth v. Spratt, 14 Philadelphia 365; Commonwealth v. Haines, 6 Pennsylvania Law Journal, 239 (Supreme Court of Pennsylvania on certiorari from Mayor's Court of Philadelphia); Pennsylvania v. Morrison, 1 Addison 274; Aldermen and Justices of the Peace, 2, Parson's Equity Cases 458; and Commonwealth v. Stalcup, 32 Lancaster Law Review 393; State v. Russell, 14 Rhode Island 506.

The Act of 1915 conferred, as a part of the amended criminal jurisdiction of the Municipal Court, exclusive jurisdiction over disorderly street walkers. Admittedly there is no express repeal of the Act of 1871; the Act of 1915 merely contains the general clause of repeal of all inconsistent legislation, thus: "All acts or parts of acts inconsistent herewith be and the same are hereby repealed"; and the Act of 1871 must be held to be repealed, if it is repealed, by virtue of an implied repeal of its provisions by necessary inconsistency between the Act of 1915 and it. But both acts clearly can stand: Opening of Parkway, 249 Pa. 367; Com., ex rel., v. DeCamp, 177 Pa. 112; Com. v. Pottsville, 246 Pa. 468.

OPINION BY ORLADY, P. J., October 23, 1916:

Florence Wilson, this relator, was arrested by a policeman, and taken before Magistrate William F. Beaton, to answer a charge of being a disorderly street-walker, in violation of the Act of Assembly of June 2, 1871; after a hearing, she was committed by the magistrate, as a disorderly street-walker under the said act, and sentenced

on February 12, 1916, to nine months imprisonment in "The House of Correction, Employment and Reformation for Adults and Minors, in the City of Philadelphia."

On the same day, by her next friend, she presented her petition for a writ of habeas corpus, to a judge of the Court of Quarter Sessions, which was allowed, and after a hearing the relator was remanded to the house of correction, &c.

On August 16, 1916, a certiorari from this court was filed and the question involved, as presented by the record, is whether the House of Correction Act of June 2, 1871, P. L. 1301, has been repealed by the Act of June 17, 1915, P. L. 1017, in so far as the acts are in jurisdictional conflict in regard to the arrest and commitment of disorderly street-walkers.

The Act of 1871 is entitled an act "To establish and maintain for the City of Philadelphia, a House of Correction, Employment and Reformation for Adults and Minors," and by its second section it provides, inter alia, "It shall be the duty of the judges of the Court of Quarter Sessions,......to commit to said House of Correction, Employment and Reformation, all vagrants, habitual drunkards, street-walkers and disorderly adults or minors, whom they deem best to so confine,"—and by Section 3, the term for such detention was fixed at "not less than three, nor more than twelve months," and, "all persons, adults or minors, that may hereafter be committed, according to the existing laws of this Commonwealth, before......any alderman of the City of Philadelphia, as a vagrant, drunkard, or disorderly street-walker, shall be sentenced to suffer confinement in the said house of correction, etc." The present committing magistrates in the City of Philadelphia, are the successors in office of the aldermen of 1871, and by the Constitution of 1874, the office of alderman in the City of Philadelphia is abolished by Article V, Section 12.

On July 12, 1913, P. L. 711, an act was approved, entitled, "An act to establish a court for the County of

Philadelphia; prescribe its jurisdiction and powers; provide for the serving of its writs, process and warrants, by the proper officers of the County or City of Philadelphia; regulate the procedure therein; and appeals therefrom, and provide for the expenses thereof, and creating a court of record, to be known as the Municipal Court of Philadelphia."

By Section 11, of this act, it was provided, "The jurisdiction of the said Municipal Court shall be exclusive,— (a), In all proceedings brought against any husband or father, wherein it is charged that he has without reasonable cause separated himself from his wife or children, or from both, or has neglected to maintain his wife or children; and in all proceedings where any child of full age has neglected or shall neglect to maintain his or her parents, not able to work or of sufficient ability to maintain themselves; and in all cases for the custody of children; (b), In all proceedings concerning dependent, delinquent or neglected children, as defined by existing laws relating thereto, which are hereby made applicable to the proceedings in the Municipal Court. The judges of the said Municipal Court shall be ex officio justices of the peace."

By the Act of June 17, 1915, P. L. 1017, the eleventh section of the Act of 1913, was amended, and its scope enlarged and extended, by adding thereto, "Provided, however, That nothing herein contained, and no exception to the jurisdiction of the said court herein set forth, shall be construed to deprive the said court of exclusive jurisdiction in those cases hereinafter in this section set forth."

Paragraphs a and b of the Act of 1913, are transcribed in the exact words of that act into the Act of 1915, and, added paragraphs embracing other matters are incorporated, as follows: (c), "In all proceedings concerning, or trials of charges brought against, all persons, whether adults or minors, accused of disorderly street-walking"; (d), "In all proceedings concerning, or trials of charges

brought against, all minors between the ages of sixteen and twenty-one who shall disobey their parents' command, or be found idle in the streets, and against all disorderly children"; (e), "All children not under the age of sixteen years deserting their homes without good and sufficient cause, or keeping company with dissolute or vicious persons, against the lawful commands of their fathers, mothers, or guardians, or other person standing in the place of parent, shall be deemed disorderly children."

Paragraph e, of the later act is an exact transcript of Section 4, of the Act of 1871, and paragraphs c and d refer to persons mentioned in Sections 2 and 3 of that act, so that it is manifest, that after the lapse of nearly a half century, the classes of persons mentioned, as disorderly street-walkers, and disorderly children, were the special subject of this legislation.

The jurisdiction in regard to the case mentioned, is declared to be exclusive in the Municipal Court, and the challenge to this later legislation, is that .it does not specifically repeal the Act of 1871, by mention of the act, and that magistrates under the earlier act, are still authorized to commit disorderly street-walkers to the house of correction, etc.

We cannot agree with this contention. This legislation is simply one of many forward movements in caring for the unfortunates. The mandate is clear and specific, —"Nothing herein contained, and no exception to the jurisdiction of the said court herein set forth shall be construed to deprive the said court of exclusive jurisdiction in those cases hereinafter in this section set forth." The reclamation of children "who shall disobey their parents' command, or be found idle in the streets, and all disorderly children," and, "all persons, whether adults or minors, accused of disorderly street-walking," are made the special subjects of this legislative paternalism.

It thus appears, that the legislature of 1915, had in

clear view the provisions of the Acts of 1871 and of 1913, and incorporated several of its sections into these acts. The legislative intention in regard to the meaning of the expression "the jurisdiction of the said Municipal Court shall be exclusive in all proceedings concerning, or trial of charges brought against all persons, whether adults or minors, accused of disorderly street-walking," is made free from all doubt.   The provisions of the Acts of 1871 and 1915 are in direct and irreconcilable conflict, as to jurisdiction of the persons mentioned; as to procedure; as to the penalties to be imposed; as to the places of confinement, the care of the persons during confinement, as well as the term of their imprisonment.   These acts cannot stand together, and it would be a manifest inconsistency to claim exclusive jurisdiction in the Municipal Court, with concurrent jurisdiction in the magistrates. The Act of 1915, was intended to be not only a substitute for the earlier act, but it was designed to give exclusive jurisdiction to the Municipal Court over the special offenses mentioned, and to prescribe rules in respect thereto.

The act was clearly intended to be remedial of existing objections growing out of the Act of 1871, and all doubt as to the exclusiveness of the jurisdiction in the Municipal Court was relieved by the second Section of the Act of 1915, viz: "Be it further enacted, that all acts or parts of acts inconsistent herewith be and the same are hereby repealed."   The severity of the old-time imprisonment in jails and penitentiaries, and even the more humane confinement in the house of correction, under the Act of 1871, were evidently the subjects the legislature considered.

It was held, in Safe Deposit & Trust Co. v. Fricke, 152 Pa. 231, that "When two statutes are so flatly repugnant that both cannot be executed, and we are obliged to choose between them, the later is deemed a repeal of the former; but whenever they can be made to stand together, effect, as far as possible should be given to both;

"Brown v. County Commissioners, 21 Pa. 37. And in Rodebaugh v. Philadelphia Traction Co., 190 Pa. 358, "It is not, however, a mandatory rule, but a principle of construction in aid of discovery of the legislative intent. The legislature expresses its will in any form, affirmative or negative, that it pleases, so long as it does not transgress constitutional prohibitions. It is under no obligation in changing the law, to use words of express repeal of any previous statute. It is frequently convenient that it should do so to aid the courts in reaching its true intention, but it is never obligatory. Nor is there any duty on the courts to so construe a new statute that it shall not affect a prior one on the same subject. It is always a question of the legislative intent......it is in aid of the discovery of such intent that the principle is applied, that a merely affirmative statute shall not be held to repeal a previous one, if by fair and reasonable construction both can stand consistently together. Where, however, the intent of the latter is clear, no repugnancy to a prior one will authorize a construction against such an intent." And in Spees v. Boggs, 204 Pa. 504, the rule is stated to be "The presumption is that the legislature did not intend any inconsistency. But when there is a conflict between a prior and a subsequent act, the presumption is that the latter repeals the former. The courts are not bound, nor even authorized to seek a construction that will reconcile them, further than to inquire if the conflict is real and not merely apparent. If it is real, the result is the repeal of the prior act."

We held in Phillips v. Barnhart, 27 Pa. Superior Ct. 26, "A subsequent statute revising the whole subject-matter of a former statute, and evidently intended as a substitute for it, although it contains no express words to that effect, operates to repeal the former." This statement of the rule was quoted from Fort Pittsburgh B. & L. Assn. v. Model Plan B. & L. Assn., 159 Pa. 308, and is applicable here, as showing the legislative declaration

to provide a new, uniform and exclusive method to deal with practically the same subject-matter. To the same effect, are many cases. See Knoblauch's License, 28 Pa. Superior Ct. 323; Reeve's App., 33 Pa. Superior Ct. 196; Turbett Township Overseers v. Port Royal Road Overseers, 33 Pa. Superior Ct. 520; In re Opening Parkway, 249 Pa. 367.

Substantially the same question was considered in Commonwealth v. Hopkins, 53 Pa. Superior Ct. 16, affirmed by the Supreme Ct. in 241 Pa. 213, in which we held, that the Allegheny County Court Act of May 5, 1911, P. L. 198,—which lodged exclusive jurisdiction in the new county court in desertion and like cases that had theretofore been vested in other courts,—did not contravene the constitutional provision (Section 26, Article V), to wit: "All laws relating to courts shall be general and of uniform operation, and the jurisdiction and powers of all courts of the same class or grade shall be uniform," and by HEAD, J., we said, "From the expressly recognized right to create new courts we naturally and necessarily deduce the further legislative right to define the jurisdiction of the courts save in so far, and so far only, as such right may be denied or limited by the Constitution itself. Certainly that instrument does not undertake to define or describe affirmatively what jurisdiction or powers the legislature may confer upon the courts it may from time to time establish."

The validity of the legislation creating the Municipal Court, was upheld by the Supreme Court in Gerlach v. Moore, 243 Pa. 603, in which case, Gottschall v. Campbell, 234 Pa. 347, and Com. v. Hopkins, supra, are fully considered, and the conclusion announced that, "The Municipal Court of Philadelphia has been lawfully established by the legislature," and in the concurring opinion by Judge MOSCHZISKER, it is said, "further, that the jurisdiction theretofore vested in the judges of the Court of Common Pleas might be transferred to a new tribunal created by the legislature, without providing for appeal

to the former court or to any other court in which Common Pleas judges had power to preside." It follows, that the legislature had full power to transfer to the Municipal Court, partial or exclusive jurisdiction over such causes and parties as might be clearly defined.

It is a universally accepted rule that every statute must be construed with reference to the object intended to be accomplished by it, and to ascertain this, it is proper to consider the occasion and necessity of its enactment, the defects and evils in the former law, the remedy provided by the new, and the construction should be given which is best calculated to advance its object by suppressing the mischief, and securing the benefits intended: 36 Cyc. 1110, 1174.

In the interpretation of statutes, words in common use, are to be construed in their natural, plain and ordinary signification.

The jurisdiction, whether in the magistrate, the Quarter Sessions or in the Municipal Court, depends wholly on the statutes conferring it, and by giving to the Municipal Court, exclusive jurisdiction in the cases mentioned, all and every jurisdiction theretofore in the other tribunals over the matters mentioned was transferred to the Municipal Court.

Nor can there be any doubt as to the meaning the legislature intended to give to the word exclusive. In its usual and generally accepted sense, as given by lexicographers, and in the ordinary speech of the people, it means,—possessed to the exclusion of others; appertaining to the subject alone, individual, sole; to confer exclusive jurisdiction on one court deprives all other courts of such jurisdiction, whether therefore exclusive or concurrent, conferred by statute." 3, Words and Phrases, 2550; possessed and enjoyed to the exclusion of others; debarred from participation and enjoyment to any other; nor including, admitting or pertaining to any other; opposed to inclusive: 17 Cyc. 871-2.

It follows that, for this offense, of disorderly street-

walking, the Municipal Court had exclusive jurisdiction, and the arrest and detention of the petitioner on the commitment by the magistrate, was contrary to existing law.

The relator is discharged.