## Enforcement of Support Law

RUTHERFORD, Deputy Attorney General, and MAURER, Assistant Deputy Attorney General, July 3, 1952.—This department is in receipt of your communication requesting advice on the legal responsibility of district attorneys of the various counties of the Commonwealth of Pennsylvania to prosecute support cases under the support laws of the Commonwealth. You inform us that for some years there has been a difference of opinion among district attorneys on the question of their legal responsibility to bring proceedings under the support laws now on the stat-

ute books. In those counties, where the district attorney held that such proceedings were not his responsibility but were rather civil actions, the work of the Department of Public Assistance has been hampered.

The office of district attorney was created by statute, the Act of May 3, 1850, P. L. 654, 16 PS §1691 et seq. The district attorney, unlike the Attorney General, who is "clothed with the powers and attributes which enveloped the attorneys general at common law" (see Commonwealth ex rel. Minerd et al. v. Margiotti, 325 Pa. 17 (1936) ), is limited by the provisions of the statute creating the office.

The duties of a district attorney, as provided for in section 1 of the Act of May 3, 1850, P. L. 654, supra, 16 PS §3431, are as follows:

". . . the officer so elected shall sign all bills of indictment, *and conduct in court all criminal or other prosecutions in the name of the commonwealth, or when the state is a party*, which arise in the county for which he is elected, *and perform all the duties which now by law are to be performed by deputy attorney generals*, and receive the same fees or emoluments of office: . . ." (Italics supplied.)

Note should be made of the fact that the district attorney thus becomes the chief law enforcement officer in the county.

The Act of May 3, 1850, P. L. 654, supra, creating the office of district attorney and defining his duties, was well interpreted in an excellent and comprehensive opinion by Brown, J., in Rotan's Petition, 23 Dist. R. 110 (1914). In this case the district attorney and the city solicitor both claimed to have the authority to prosecute support cases. The support and desertion laws were reviewed and considered and the court on the basis of the Act of 1850, creating the office of district attorney, placed the responsibility of prosecut-

ing support cases commenced by petition on the district attorney, as follows (pages 111-112):

"The Acts of March 31, 1812, 5 Sm. Laws, 391, and June 13, 1836, P. L. 539, originally vested the right to sue deserting husbands, etc., in the Guardians or Overseers of the Poor. In fact, the first act was passed for the purpose of creating the Board of the Guardians of the Poor, while the suit to be brought by them against a non-supporting husband, under certain circumstances, was but incidental thereto. The Act of June 13, 1836, P. L. 539, made the warrant returnable to the Court of Quarter Sessions. Under both of these acts, the City Solicitor appeared for his own clients, the 'Guardians of the Poor.' When the Act of April 13, 1867, P. L. 78, was passed, to the effect that any alderman, justice of the peace, etc., could issue a warrant for a deserting husband, etc., upon the information of any person, which should be returnable to the Court of Quarter Sessions, a radical departure was effected in the method of procedure in such cases. It then became the duty of the District Attorney to prosecute these cases, and not that of the City Solicitor. Especially was this so in view of the provisions of the Act of May 3, 1850, P. L. 654, creating the office of District Attorney. The language referred to is as follows: 'The officer so elected (District Attorney) shall sign all bills of indictment and conduct in court all criminal or other prosecutions in the name of the Commonwealth, or when the State is a party, which arise in the county for which he is elected.' . . .

"In other words, by the very nature of the previous acts of assembly, by the abolition of the Board of the Guardians of the Poor, by the doing away with preliminary hearings (thus making the Act of April 9, 1872, P. L. 1004, nugatory), it became necessary for the legislature to indicate who should take charge of this class of cases. It did this by directing that the

District Attorney should carry out the duties imposed upon his office by the Act of 1850."

There is no question as to the responsibility of the district attorney to prosecute support cases brought under sections 731 and 733 of The Penal Code of June 24, 1939, P. L. 872, as amended, 18 PS §§4731 and 4733.

See Commonwealth v. Widmeyer, 31 Del. Co. 213 (1942), in which the court differentiates between the two sections of the code, namely, section 731, which provides primarily for punishment of the deserting husband, and section 733 which provides for protection and maintenance of wives and children by the securing of support.

The Support Law of June 24, 1937, P. L. 2045, as amended, 62 PS §1971 et seq., though it provides for commencement of action by petition, is more comparable to section 733 of The Penal Code, supra, since it provides for maintenance and support of husbands, wives, children and parents by legally responsible relatives.

Section 3 of The Support Law, as amended, supra, 62 PS §1973, provides in part as follows:

"(a) The husband, wife, child, father and mother of every indigent person, whether a public charge or not, shall, if of sufficient financial ability, care for and maintain, or financially assist, such indigent person at such rate as the court of the county, where such indigent person resides shall order or direct.

"(b) The courts shall have power to hear, determine and make orders and decrees in such cases upon the petition of such indigent person, or of any other person or any public body or public agency having any interest in the care, maintenance or assistance of such indigent person;"

In the enforcement of this Support Law of 1937, the State is the party concerned, and the district at-

torney represents the State in the various counties. In performing his duties under the Act of 1850, supra, and the support laws, supra, he is assisting the State to fulfil a function of government, namely, the State's function to care for its indigent and also to enforce support against legally responsible relatives to the end that the family unit may be kept intact and the taxpayer protected.

See Commonwealth ex rel. Schnader v. Liveright, Secretary of Welfare et al., 308 Pa. 35 (1932), that the care of the indigent is a governmental function.

See also Blum's Estate (No. 2), 38 D. & C. 594 (1940).

It should be noted that persons other than a husband or father were not charged with the duty of supporting indigent relatives until the duty was placed upon them by statute.

See 39 Am. Jur. 711, §70:

"At common law an adult child is under no duty or obligation to contribute to the support of his parents. Whatever duty rests on him in this respect must be based upon either contract or statute."

Also, see Commonwealth v. Morrisey, 150 Pa. Superior Ct. 202, 204, 27 A. (2d) 446 (1942). And also, 41 Am. Jur., 687, §9:

". . . The procedure for compelling support of an indigent by one of his relatives designated by the poor laws is necessarily exclusively statutory. . . ."

See Commonwealth v. Chiara, 60 D. & C. 547 (1947), for history of legislation dealing with this subject of support of parents by adult children.

The Support Law, supra, was designed to compel the "husband, wife, child, father and mother of every indigent person" in this Commonwealth to assist, either financially or to care for and maintain, said indigent person as the court of the county where such indigent person resides shall order or direct; subject,

however, to the court's finding of financial ability of the person charged with the duty of supporting the indigent person to meet the court order. It is, therefore, evident that the person named in the act is now charged with a statutory duty of supporting the indigent person to the best of his or her financial ability to do so.

See Mattis et ux. v. Arcadia Coal Company et al., 148 Pa. Superior Ct. 462, 465, 25 A. (2d) 610 (1942).

As already pointed out, the duties of a district attorney call for him to:

". . . conduct in court all criminal or other prosecutions in the name of the Commonwealth, or when the State is a party, which arise in the county for which he is elected, *and perform all the duties which now by law are to be performed by deputy attorney-generals* . . . it imposes upon him the duty of conducting 'all criminal or *other prosecutions*, which arise in the county for which he is elected.' . . ." (Slattery v. Hendershot, 72 Pa. Superior Ct. 240, 244 (1919).) (Italics supplied.)

See Commonwealth v. Lehman, 309 Pa. 486, 496 (1932).

See also Margiotti Appeal, 365 Pa. 330, 346 (1950).

A cursory reading of the duties of the district attorney enumerated under the Act of May 3, 1850, P. L. 654, supra, and keeping in mind the language of the court in Slattery v. Hendershot, supra, and of the quotations from the cited cases that follow, would emphasize that the district attorneys of the various counties have the duty and responsibility under the support laws, supra, of prosecuting all support cases.

In the Commonwealth ex rel. Attorney General v. Hipple, 69 Pa. 9 (1870), the court, speaking of the duty of a district attorney, stated at pages 15-16:

". . . He [district attorney] is bound to follow the business of the Commonwealth into whatever courts

in the county that business is authorized by law to be tried. . . ."

It is the duty of a district attorney to bring "all criminal or other *prosecutions*".

In Rotan's Petition, supra, the court interprets the meaning of the words "other prosecutions", as follows:

"It is impossible to give the use of the word 'prosecution' in section 11 the narrow meaning of following a case in a criminal procedure only.

"In 'Words and Phrases Judicially Interpreted,' it is said: 'To prosecute a suit is, according to the common acceptation of language, to continue a demand which has been made by the institution of process in the court of justice.'

"In Burrough's Law Dictionary, vol. 2, 'prosecution' is defined as being the following up or carrying on of a judicial proceeding; and, in a stricter sense, the carrying on of a judicial proceeding on behalf of a complaining party, as distinguished from defence; and in the strictest sense, the carrying on of a criminal proceeding on behalf of the state or government, as by indictment or information.

"We think that the word 'prosecution,' as used in the Act of July 12, 1913, P. L. 711, should not be used in the strictest sense, but merely to indicate the following up or the carrying on of an action or other judicial proceeding. *Indeed, this is the interpretation put upon the word by the legislature itself, for the Act of 1850 specifically refers to 'criminal or other prosecutions,' indicating that in the legislative mind there would be cases of other than a criminal nature of which the District Attorney should take charge."* (Italics supplied.)

In Commonwealth v. Allen, 15 D. & C. 731, 736 (1930), the court stated as follows:

". . . It then became the duty of the district attorney to prosecute the cases. Especially was this so in view of the provisions of the Act of May 3, 1850, P. L. 654, creating the office of district attorney. The language referred to is as follows: 'The officer so elected [District Attorney] shall sign all bills of indictment, and conduct in court all criminal or other prosecutions in the name of the commonwealth, or when the state is a party, which arise in the county for which he is elected.' . . .

"We think that the word 'prosecution' should not be used in the strictest sense, but merely to indicate the following up or the carrying on of an action or other judicial proceeding. Indeed, this is the interpretation put upon the word by the legislature itself, *for the Act of 1850 specifically refers to 'criminal or other prosecutions,'* indicating that in the legislative mind there would be cases of other than a criminal nature of which the district attorney should take charge." (Italics supplied.)

On the basis of the Act of May 3, 1850, P. L. 654, and cited authorities, district attorneys of the various counties shall conduct in court all criminal or other prosecutions in the name of the Commonwealth or when the State is a party, and this includes all actions brought under the support laws, supra.

The Uniform Enforcement of Support Law of May 10, 1951, P. L. 279, 62 PS §2043.1 et seq., makes no change in the prosecution of support cases but gives additional remedy to the district attorneys of the various counties to reach legally responsible relatives who have crossed State lines.

It is our opinion, therefore, that under the Act of May 3, 1850, P. L. 654, 16 PS §1691 et seq., district attorneys of the various counties have the primary legal authority and responsibility to prosecute support cases under the support laws, and your department,

as heretofore, should in public assistance cases give the district attorneys of the various counties the coöperation necessary to enforce support orders under the support laws against legally responsible relatives to the end that self-dependency and the desire to be good citizens and useful to society will be encouraged in accordance with section 1 of the Public Assistance Law of June 24, 1937, P. L. 2051, as amended, 62 PS §2501.